[No. C039862. Third Dist. Mar. 25, 2003.]

CHRISTOPHER J. THOMPSON, a Minor, etc., et al., Plaintiffs and Appellants, v.
SACRAMENTO CITY UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

**COUNSEL**

Jay-Allen Eisen Law Corporation, Eisen & Johnston Law Corporation, Jay-Allen Eisen, Marian M. Johnston; Sinclair, Wilson & Bedore and Jess C. Bedore for Plaintiffs and Appellants.

Laplante & Spinelli, John M. Laplante and M. Teresa Abad Levenfeld for Defendant and Respondent.

**OPINION**

**SCOTLAND, P. J.**—Christopher J. Thompson (plaintiff), a minor, was injured during an argument in school when he was punched by another student. The injury occurred the day after it appeared that the assailant had threatened to hit another student and was suspected of having set fire to a poster on a school bulletin board.

Plaintiff and his parents appeal from the judgment entered in favor of the Sacramento City Unified School District (defendant) after the trial court granted defendant's summary judgment motion in this personal injury action. Appellants contend that they have demonstrated a triable issue of material fact regarding defendant's liability for negligence due to its failure to suspend the assailant from school before plaintiff was injured and its failure to exercise reasonable care in supervising students in its charge. Appellants also argue that the court erred in excluding declarations of their experts. We shall affirm the judgment.

As we will explain, defendant did not owe a duty to plaintiff to suspend the assailant on the day before he injured plaintiff and, in any event, on the

facts of this case, a properly instructed jury could not find that defendant acted unreasonably in failing to do so before completing an investigation of the allegations. As to defendant's alleged breach of its general duty to supervise students in its charge, appellants failed to present competent evidence to show the alleged negligence was the proximate cause of plaintiff's injury. The expert witness declarations in this regard were properly excluded because they were speculative and conjectural.

## FACTS

Plaintiff, a high school student, was injured on January 22, 1999, during the lunch period at defendant's Kennedy High School.

Immediately before lunch, plaintiff and another student, Demario C., were in a physical education class. Someone told Demario that plaintiff was selling marijuana and was carrying a substantial amount of it. Demario related this information to his friend, Demarcus M., during lunch.

Demarcus and Demario quickly formed a plan to rob plaintiff of the marijuana they believed he was carrying. They decided that Demarcus would wait in the bathroom while Demario lured plaintiff inside with the prospect of a marijuana sale. In accordance with the plan, Demario approached plaintiff and whispered that he knew someone in the bathroom who wanted to buy some sacks (meaning marijuana). Plaintiff then followed Demario to the bathroom.[1]

Inside the bathroom, Demarcus told plaintiff to "come out of your pockets," indicating he was being robbed. When plaintiff refused to hand over anything, a scuffle ensued. Plaintiff broke free and left the bathroom. However, a few feet outside of the bathroom, he stopped and turned to confront Demarcus.[2] A fight ensued, and Demarcus hit plaintiff three or four times in the face, causing him to fall backwards and strike his head on the ground. Plaintiff suffered significant injury for which he seeks compensation from defendant.

Much of the evidence submitted on the summary judgment motion concerned Demarcus. It appears that he had a number of suspensions in primary

[1] Although the record reflects that plaintiff was a regular user of marijuana, it does not indicate one way or the other whether he in fact was selling marijuana or had it with him at the time of the attempted robbery. But there was no evidence presented to dispute Demario's testimony that plaintiff voluntarily followed him to the bathroom when told of a potential marijuana sale.

[2] One student witness testified she heard plaintiff and Demarcus arguing. When the matter could have been dropped because they were both walking away, a couple of girls chided plaintiff about letting Demarcus talk to him like that. This was when plaintiff stopped to confront Demarcus.

school and middle school, some of which were related to fighting. In 1996, he was expelled from Sam Brannan Middle School for an assault on a student and apparently on the campus monitor who broke up the fight. The expulsion order imposed a number of requirements that Demarcus would have to meet before requesting readmission. Demarcus attended a continuation school for the next year. In the spring of 1997, a district hearing was held at which the hearing officer was satisfied that Demarcus should be readmitted to public school.

Demarcus was assigned to Kennedy High School commencing in the fall of 1997. He performed adequately during his first year and a half of attendance there. For the most part he maintained passing grades. He was voted most inspirational player on the freshman football team and was elevated to the varsity in his second year. During this period, Demarcus was not involved in any fights or physical altercations. However, he had a few minor disciplinary actions, such as in-house suspensions or detentions and Saturday school sessions. These were for such things as failing to suit up for physical education, not writing sentences, being late to class, refusing to give up a Walkman, and disrupting class. There was no evidence that he engaged in any threatening or violent behavior during that time.

On January 6, 1999, a female student attached a poster to an outdoor bulletin board, announcing her birthday. During the lunch period, someone deliberately set fire to the poster. The fire was quickly extinguished, and arson investigators were assigned to the case. On January 20, 1999, three students told vice-principal McClymonds that Demarcus had started the fire. McClymonds contacted the arson investigators to give them the names of the students. McClymonds was advised that the arson investigators would pursue the matter and that he should defer to them so he would not "muddy up" their investigation.[3]

Near the end of the school day on January 21, 1999, Demarcus got into an argument with another student, Yvonne J. It appears that Yvonne disputed

---

[3]The student witnesses talked to McClymonds, and he relayed the information to the arson investigators, just a day and a half before Demarcus injured plaintiff. The arson investigators did not interview the students until after plaintiff was injured. The interviews revealed that one student was simply relying upon what the others told her. Another student was about 40 feet away and saw Demarcus near the poster when the fire started. She apparently did not actually see him start the fire, although she said he called himself the "banner bandit." The third student said she was only two or three feet away, heard Demarcus say he was going to burn the banner, and saw him light it with a cigarette lighter.

Appellants suggest McClymonds was informed that Demarcus had set other fires at the school. There were multiple fires during the relevant time period, and evidence that Demarcus was responsible for one might raise a suspicion that he was responsible for others. However, this is no more than a suspicion. There is no evidence in the record to tie Demarcus to the other fires.

Demarcus's comment that his former girlfriend was going to "do his hair." When Demarcus said he would hit his former girlfriend or "beat her ass" if she did not do his hair, Yvonne replied he was "helly messed up," and she may have threatened to hit him. Demarcus then threatened to hit Yvonne, but she retorted that she would get her dad if Demarcus tried to hit her. Continuing this scintillating colloquy, Demarcus said "f—your dad." At that point, the teacher removed Demarcus from the classroom and called the campus monitors. The students were taken to the office and were told that they would have to go to conflict management.[4] Demarcus said he would refuse to do so, and was told that refusal would result in suspension for three days. He said he did not care. No formal action was taken before lunch period of the following day, when Demarcus injured plaintiff.

In January 1999, security at Kennedy High School was provided by one full-time campus police officer, seven campus monitors, and volunteers from a group called Parents-On-Campus. Security personnel and volunteers roam the campus with hand-held radios that can be used to call in problems.

The F-wing restroom, where the fight occurred, was in the overlapping patrol areas of campus monitors Guzman and Conrad. Guzman patrolled past the restroom just before the fight started. He looked into the restroom and saw nothing amiss. After Guzman walked down the hallway, he noticed students going toward the restroom. So he returned and found plaintiff on the ground. Guzman estimated that only a minute and a half to two minutes had passed since he was at the restroom.

DISCUSSION

I

In reviewing an order granting a summary judgment motion, we independently review the record to determine whether there are triable issues of material fact. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) We view the evidence in a light most favorable to the plaintiff as the losing party. (*Id.* at p. 768.) Summary judgment will be upheld when, viewed in such a light, the evidentiary submissions conclusively negate a necessary element of plaintiff's cause of action, or show that under no hypothesis is there a material issue of fact requiring the process of a trial, thus defendant is entitled to judgment as a

[4]Conflict management is an informal procedure afforded students who have been in an argument without blows being thrown. They meet with another student who has been trained in peer mediation in order to resolve their dispute without the necessity of further official measures.

matter of law. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

A

Appellants suggest that Demarcus should not have been readmitted to the district's public schools after his expulsion from middle school.

Upon expelling a student, the district governing board must recommend a plan of rehabilitation for the pupil. (Ed. Code, § 48916, subd. (b).) An expelled student is entitled to apply for readmission after he or she has served an appropriate period of expulsion. (Ed. Code, § 48916, subd. (a).) "Upon completion of the readmission process, the governing board shall readmit the pupil, unless the governing board makes a finding that the pupil has not met the conditions of the rehabilitation plan or continues to pose a danger to campus safety or to other pupils or employees of the school district." (Ed. Code, § 48916, subd. (c).)

Here, the record reflects that, after a year of expulsion, Demarcus applied for readmittance and, at an administrative proceeding, he satisfied the district's hearing officer that he should be readmitted to school.

The decision to readmit a student to school is a matter for which there is statutory immunity. Pursuant to Government Code section 815.2, subdivision (b), a public entity is not liable for the act or omission of an employee if the employee is immune from liability. And Government Code section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

A school district's exercise of authority to expel and/or readmit a pupil involves the type of decision that entails " 'the resolution of policy considerations, entrusted by statute to a coordinate branch of government, that compels immunity from judicial reexamination.' " (*Skinner v. Vacaville Unified School Dist.* (1995) 37 Cal.App.4th 31, 39 [43 Cal.Rptr.2d 384], quoting *Johnson v. State of California* (1968) 69 Cal.2d 782, 795 [73 Cal.Rptr. 240, 447 P.2d 352]; see also *Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 747-749 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701]; *Becerra v. County of Santa Cruz* (1998) 68 Cal.App.4th 1450, 1462-1464 [81 Cal.Rptr.2d 165].)

Thus, defendant cannot be held liable to appellants on the basis of the district's decision to readmit Demarcus to public school in the fall of 1997.

B

Nevertheless, appellants contend there is a triable issue of material fact as to whether Demarcus should have been suspended immediately when vice-principal McClymonds learned that Demarcus may have been responsible for the poster fire and threatened to hit student Yvonne J. According to appellants, a jury could conclude that, if Demarcus had been suspended immediately on the afternoon of January 21, he would not have been on campus during lunch period the following day when he injured plaintiff. The contention fails.

Education Code section 48900 states that a student may not be suspended or recommended for expulsion unless the superintendent or principal of the school in which the student is enrolled finds that the student has committed one or more of certain specifically enumerated acts. As relevant here, the acts that may justify suspension or expulsion include causing, attempting to cause, or threatening to cause physical injury to another person (Ed. Code, § 48900, subd. (a)(1)); causing or attempting to cause damage to school property or private property (Ed. Code, § 48900, subd. (f)); and disrupting school activities or otherwise willfully defying the valid authority of supervisors, teachers, administrators, school officials, or other school personnel engaged in the performance of their duties (Ed. Code, § 48900, subd. (k)).

Education Code section 48900.5 provides that suspension shall be imposed only when other means of correction fail to bring about the proper conduct. However, suspension may be imposed for a first offense for certain acts, including causing, attempting to cause, or threatening to cause physical injury. Suspension also may be imposed for a first offense if the principal or superintendent determines that the student's presence causes a danger to persons or property or threatens to disrupt the instructional process.

A suspension from school may be imposed for no more than five consecutive school days. (Ed. Code, § 48911, subd. (a).) The decision to impose a suspension may be made by the principal of the school, the principal's designee, or the superintendent of schools. (*Ibid.*)[5] Normally, a suspension must be preceded by an informal conference conducted by the principal, the principal's designee, or the superintendent of schools, between the student and, whenever practicable, the teacher, supervisor, or school employee who referred the student for discipline. (Ed. Code, § 48911, subd. (b).) At the

---

[5]The principal's designee is any one or more administrators at the school site specifically designated by the principal in writing to assist with disciplinary procedures. (Ed. Code, § 48911, former subd. (i).) Here, it appears that vice-principal McClymonds was the principal's designee.

conference, the student must be informed of the reason for the disciplinary action and the evidence against the student, and must be accorded the opportunity to present his or her version of the incident and evidence in defense against the allegation. (*Ibid.*)

A student may be suspended without an opportunity for a conference only if it is determined that an emergency situation exists. (Ed. Code, § 48911, subd. (c).) An emergency situation "means a situation determined by the principal, the principal's designee, or the superintendent of schools to constitute a clear and present danger to the life, safety, or health of pupils or school personnel." (*Ibid.*) In the event of an emergency suspension, the conference must be held within two school days unless it is waived or the student is physically unable to attend. (*Ibid.*)

■ The clear and present danger standard is a test for determining when, despite constitutional requirements or limitations that otherwise would apply, the government can act to prevent a substantive evil from occurring. The test requires consideration of the extent to which the evil to be prevented is substantial or serious, the probability of its occurrence, and the extent to which it is imminent. To meet the clear and present danger test, the substantive evil must be extremely serious and the degree of imminence extremely high. (*Danskin v. San Diego Unified Sch. Dist.* (1946) 28 Cal.2d 536, 542-543 [171 P.2d 885]; see also *Bridges v. California* (1941) 314 U.S. 252, 262-263 [62 S.Ct. 190, 193-194, 86 L.Ed. 192, 202-203, 159 A.L.R. 1346]; *Katzev v. County of Los Angeles* (1959) 52 Cal.2d 360, 367 [341 P.2d 310].) But there is no talismanic formula for application of the clear and present danger test; rather, it is by nature a balancing test requiring the exercise of significant judicial or quasi-judicial discretion. (*Sun Co. of San Bernardino v. Superior Court* (1973) 29 Cal.App.3d 815, 826-827 [105 Cal.Rptr. 873].)

Statutory procedures with respect to suspension of school students were enacted to meet the constitutional requirements of due process. In *Goss v. Lopez* (1975) 419 U.S. 565 [95 S.Ct. 729, 42 L.Ed.2d 725], the United States Supreme Court held that school students are entitled to due process of law in the decision to impose a short suspension. This requires that there be sufficient cause determined through fundamentally fair procedures. (*Id.* at pp. 573-574 [95 S.Ct. at pp. 735-736, 42 L.Ed.2d at pp. 734-735].) For short suspensions, the procedure need not be formal; however, at a minimum, it requires that the student be given oral or written notice of the charges, an explanation of the evidence against the student, and the opportunity to contest the charges. (*Id.* at p. 581 [95 S.Ct. at pp. 739-740, 42 L.Ed.2d at

p. 739].) Obviously, due process of law demands that the administrator who imposes discipline must make a fair and unbiased attempt to determine what happened and if it justifies suspension. (*Id.* at pp. 583-584 [95 S.Ct. at pp. 740-741, 42 L.Ed.2d at p. 740]; see *Perlman v. Shasta Joint Jr. College Dist. Bd. of Trustees* (1970) 9 Cal.App.3d 873, 883 [88 Cal.Rptr. 563].) Appropriate procedures for suspension must precede the actual imposition of a suspension unless the student's presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process. (*Goss v. Lopez, supra,* 419 U.S. at p. 582 [95 S.Ct. at p. 740, 42 L.Ed.2d at p. 739].)

To briefly summarize the constitutional and statutory requirements for imposition of a suspension: (1) a suspension may be imposed only by a relatively high level administrator, i.e., the principal, the principal's formal designee, or the superintendent of schools; (2) before imposing suspension, the administrator must be satisfied that he or she knows what happened and that the conduct warrants suspension—in this respect, the administrator must bear in mind the Legislature has expressed a preference that, if possible, misconduct be addressed by means other than suspension; (3) unless the administrator is satisfied that the situation constitutes a clear and present danger to life, health or safety, then the determination whether to suspend may not be made until the student is accorded a conference at which the student is informed of the charges and the evidence, and is given the opportunity to explain or contest the charges; and (4) in reaching a determination, the administrator must remain fair and unbiased.

In this light, only one reasonable conclusion can be drawn from the facts here: defendant cannot be held liable for the injury to plaintiff based on McClymonds's failure to immediately suspend Demarcus after his argument with Yvonne. We explain.

When a plaintiff seeks to impose liability upon a defendant for a particular act or omission, the plaintiff must establish that the act or omission breached a duty owed to the plaintiff. Duty is a question of law for the court to determine on a case-by-case basis. (*Bryant v. Glastetter* (1995) 32 Cal.App.4th 770, 778 [38 Cal.Rptr.2d 291].) Duty is not a discoverable or immutable fact of nature; it is the expression of the sum total of those considerations of policy that lead the court to say that the particular plaintiff was entitled to protection from the particular act or omission alleged. (*Ibid.*; *Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1498 [57 Cal.Rptr.2d 406].) The factors that may be considered include "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff

suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) When a public agency is involved, additional factors include the extent of the agency's powers, the role imposed on the agency by law, and the limitations imposed on it by budget. (*Hernandez v. City of Pomona, supra,* 49 Cal.App.4th at pp. 1498-1499.)

In this case, several factors compel the conclusion that McClymonds did not owe a duty to plaintiff to immediately suspend Demarcus on the afternoon of January 21.

First, the conduct for which suspension allegedly should have been imposed was wholly unrelated to plaintiff. On January 21, Demarcus and plaintiff bore no antagonism toward one another, and they do not appear to have even known each other. Demarcus became a danger to plaintiff only during the lunch period on January 22, when he was told that plaintiff had a substantial amount of marijuana. While in appropriate circumstances a duty may arise when a person makes a specific threat of harm directed at a specific victim, courts otherwise generally decline to recognize a special duty. (See *Thompson v. County of Alameda, supra,* 27 Cal.3d at p. 754.)

Second, the only basis upon which it can be claimed that the failure to immediately suspend Demarcus caused plaintiff's injury is that it enabled him to be on campus the following day. There was no other logical connection between Demarcus's prior conduct and plaintiff's injury. This does not establish a close connection between vice-principal McClymonds's failure to suspend Demarcus and the injury, thus militating against a finding of duty. (See *Bryant v. Glastetter, supra,* 32 Cal.App.4th at pp. 781-782.)

Third, and most significant, is the matter of McClymonds's power with respect to suspension and the role imposed upon him by law. Although he had the authority to suspend students, it was an authority that McClymonds was required to exercise in accordance with substantive and procedural requirements imposed by the Legislature and by the Constitution. These included recognition of the legislative preference for lesser measures of discipline; the requirement of a presuspension conference unless McClymonds was satisfied the student's presence created a clear and present

danger; the requirement that McClymonds be satisfied he knew the facts and that the incident warranted suspension; and the requirement that he proceed in a fair and unbiased manner, unaffected by extraneous considerations.

Where, as here, the conduct raising an administrator's suspension authority is wholly unrelated to the plaintiff, and the plaintiff's only basis for asserting a causal connection is that the failure to impose an immediate suspension allowed the student to be on campus, the imposition of a special duty to suspend would undermine the role of an administrator in the suspension process. There would be an inevitable conflict between the administrator's obligation to act in a fair and unbiased manner and the fear of potential liability should anyone be injured during the period for which an immediate suspension could be imposed. This conflict precludes the recognition of a special duty to suspend a student under such circumstances.

## C

In any event, even assuming for purpose of argument that a claim of negligence can be premised on McClymonds's failure to immediately suspend Demarcus on the afternoon of January 21, we are satisfied that a properly instructed jury could not find McClymonds acted unreasonably in failing to do so.

■ Although breach of duty generally is a question of fact, it may be determined as a question of law if reasonable jurors following the law could draw only one conclusion from the evidence. (*Lindstrom v. Hertz Corp.* (2000) 81 Cal.App.4th 644, 652 [96 Cal.Rptr.2d 874]; *Osborn v. Hertz Corp.* (1988) 205 Cal.App.3d 703, 712-713 [252 Cal.Rptr. 613].)

■ If a claim of negligence could be premised on McClymonds's failure to immediately suspend Demarcus, a jury would have to be informed of the statutory and constitutional requisites that inhere in the suspension decision. In particular, the jury would have to be instructed that an immediate suspension can be imposed only if the facts satisfy the administrator that the student's presence at school constitutes a clear and present danger. The jury also would have to be instructed that it may not second-guess the administrator's action through the benefit of hindsight; instead, it must defer to the administrator's judgment and discretion unless he acted unreasonably under the circumstances that existed at the time he acted. (See authorities cited in pt. B., *ante*.)

Setting fire to a birthday poster is a matter for which suspension could be imposed. (Ed. Code, § 48900, subd. (f).) However, it is not a matter for

which suspension can be imposed for a first offense unless it is determined that the student's presence poses a danger to person or property or threatens to disrupt the educational process. (Ed. Code, § 48900.5.) The poster was burned on January 6, and the students who implicated Demarcus waited two weeks, until January 20, to come forward. At that point the matter, including the students' credibility, had not been investigated and Demarcus had remained in school for two weeks without injurious consequences. These facts preclude a rational jury from finding that McClymonds acted unreasonably in awaiting an investigation before deciding what, if any, disciplinary action should be imposed for the alleged arson.

The same must be said with respect to Demarcus's argument with Yvonne J. near the end of the school day on January 21, when the two students got into a heated confrontation about whether Demarcus's former girlfriend was going to "do his hair." Yvonne called Demarcus "helly messed up" and may have said she was going to hit him. In turn, Demarcus threatened to hit her. Yvonne responded by stating she would get her dad if Demarcus tried to hit her; whereupon Demarcus said "f——your dad." In other words, nothing more than vague threats were exchanged, the argument was mutual, and it did not escalate into violence. In his deposition, McClymonds testified that students have a habit of saying things like "I'm gonna whip your butt" and that, when threats are reported, he investigates to determine what happened and why, and what the next step should be. These facts preclude a rational jury from finding that McClymonds acted unreasonably in waiting for an investigation and conference with Demarcus before deciding upon the next step to take.

When Demarcus was escorted to the office after his argument with Yvonne, campus monitor Saldana told him he would have to go to conflict management. When Demarcus said he would refuse to do so, he was told that his refusal would result in an "automatic" three-day suspension. Appellants claim this exchange establishes that Demarcus should have been immediately suspended for three days and that, had he been suspended, he would not have been on campus to injure plaintiff. The contention fails.

An immediate suspension cannot be imposed except upon an individualized factual determination, made by the appropriate administrator, that the situation poses a clear and present danger to the life, safety, or health of pupils or school personnel. (Ed. Code, § 48911, subd. (c).) A blanket rule of immediate suspension would be contrary to the school's statutory authority and unlawful. And the record reflects only that Demarcus's refusal to take part in conflict management would result in an "automatic" suspension, not an "immediate" one. If, after investigation, McClymonds determined that

conflict management was the appropriate response to the argument, a refusal to attend would be grounds for suspension. (Ed. Code, §§ 48900, subd. (k), 48900.5.) But it would be legally precipitous to impose an immediate suspension—based on Demarcus's statement that he would not participate in conflict management—before the matter was investigated and a determination is made, and before a conference was held at which he was given the actual choice of going to conflict management or accepting a suspension.

Appellants argue that McClymonds was negligent in failing to go through the suspension process before lunch period on the day following the argument. The record reflects that campus monitor Saldana orally informed McClymonds of the argument on the afternoon of January 21, and submitted a written report to his office the next morning. McClymonds may have spoken with Yvonne and her father on the morning of January 22.[6] However, there is no evidence that, before lunch period on January 22, McClymonds had the opportunity to consult the most important witness to the argument, Mr. DeLoach, the teacher in whose class the argument occurred and who referred the students to McClymonds.[7]

The Education Code recognizes the importance of information that can be provided by the teacher, supervisor, or school employee who refers a student for discipline. (Ed. Code, § 48911, subd. (b).) In this case, the statements of the students describing the argument are essentially similar and are equivocal as to the seriousness of the threats uttered. The teacher who witnessed the argument could shed light on such things as the volume and tone of the statements, the gestures and body language that accompanied the argument,

[6]Yvonne's father testified he went to the school on two days. On the first day, he spoke with the campus police officer and said he wanted to submit a citizen's complaint against Demarcus. On the second day, he and his daughter spoke with McClymonds. The father was unsure of the timing of these visits, but the officer's report places her contact with him on the morning of January 22. Under the circumstances, it is a real reach to assert, as appellants do, that Yvonne and her father spoke to McClymonds before plaintiff was injured.

[7]For at least part of the morning of January 22, McClymonds was involved in another unrelated disciplinary matter. That morning, a student was discovered with a knife. Possession of a knife that is of no reasonable use to the student requires the principal or superintendent of schools to recommend expulsion unless it is determined that expulsion is inappropriate due to the particular circumstance. (Ed. Code, § 48915, subd. (a)(2).) During the morning of January 22d, McClymonds investigated the incident, took the student through the suspension process, started the emergency preexpulsion hearing process, and attempted to contact the student's parents. At lunchtime, after failing to reach the parents, McClymonds and campus police officer Grajeda took the boy home and suspended him to his father.

In this respect, as in others, appellants misstate the record when they assert that the knife incident did not happen until lunchtime. The record reflects the student was taken home at lunchtime, but the investigation, suspension conference, and other actions occurred during the morning.

whether mutual threats were made, and the apparent earnestness of the threats. Under these circumstances, a rational jury could not find that McClymonds was unreasonable in failing to act before he had all the relevant information concerning the argument.

For these reasons, we conclude that defendant cannot be held liable to appellants for McClymonds's failure to immediately suspend Demarcus following his argument with Yvonne. However, this conclusion does not end our inquiry.

D

It is well settled that "a school district bears a legal duty to exercise reasonable care in supervising students in its charge and may be held liable for injuries proximately caused by the failure to exercise such care." (*Hoyem v. Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 513 [150 Cal.Rptr. 1, 585 P.2d 851].) Thus, we must consider potential bases of liability other than the failure to suspend Demarcus.

For reasons that follow, we find no basis on which to conclude that defendant owed a special duty of care to plaintiff.

A special duty of care may arise where a person makes a specific threat against a specific person or otherwise presents a foreseeable danger to a readily identifiable potential victim. (See *Thompson v. County of Alameda, supra,* 27 Cal.3d at pp. 752-754.) Here, however, no aspect of Demarcus's prior conduct bore any relationship to plaintiff. It does not appear that Demarcus and plaintiff even knew each other before the lunch period on January 22. The danger to plaintiff from Demarcus arose suddenly during the lunch period in which plaintiff's injury occurred, when Demarcus was told that plaintiff was carrying a substantial amount of marijuana on his person. This does not constitute a basis upon which to attach a special duty of protection.

In an appropriate case, a special duty may arise where a school is aware that a particular location has become dangerous. For example, in *Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799 [205 Cal.Rptr. 842, 685 P.2d 1193], a student was subjected to assault and attempted rape while using a stairway in the school's parking lot. The assailant attacked from behind unreasonably thick and untrimmed foliage and trees, and there had been previous assaults of a similar nature in that area. (*Id.* at p. 805.) The court held that, in light of the known danger, the school had a duty to warn students, to trim the foliage, or to take other reasonable measures to

protect students. (*Id.* at p. 815.) Here, however, there was no evidence that the bathroom area where the fight occurred was the scene of previous fights or was otherwise in a dangerous condition.

This brings us to the question of defendant's general duty of care. ▉ "While school districts and their employees have never been considered insurers of the physical safety of students, California law has long imposed on school authorities a duty to 'supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection. [Citations.]' " (*Dailey v. Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747 [87 Cal.Rptr. 376, 470 P.2d 360].) "The standard of care imposed upon school personnel in carrying out this duty to supervise is identical to that required in the performance of their other duties. This uniform standard to which they are held is that degree of care 'which a person of ordinary prudence, charged with [comparable] duties, would exercise under the same circumstances.' [Citations.]" (*Ibid.*) "Either a total lack of supervision [citation] or ineffective supervision [citation] may constitute a lack of ordinary care on the part of those responsible for student supervision." (*Ibid.*)

When an injury occurs despite a defendant's efforts to provide security or supervision, it is relatively easy to claim that, ipso facto, the security or supervision provided was ineffective. Without more, such claims fail. For analysis purposes, courts assume duty and breach and focus upon causation.

For example, in *Nola M. v. University of Southern California* (1993) 16 Cal.App.4th 421 [20 Cal.Rptr.2d 97], the plaintiff, who was attacked and raped on the university campus, obtained a judgment based on the testimony of an expert who criticized the university's security measures and found them wanting. It was clear that a duty was owed and the Court of Appeal simply assumed the evidence was sufficient to support breach. (*Id.* at p. 427.) But the court concluded the evidence demonstrated only "abstract negligence" and did not establish causation. (*Id.* at pp. 424, 439.) The court noted "that reasonable protective measures cannot stop wanton violence and that even significant increases in police personnel cannot prevent all crime or any particular crime." (*Id.* at p. 436.) To establish causation, plaintiff must demonstrate that a particular omission caused the injury. "Otherwise, where do we draw the line? How many guards are enough? Ten? Twenty? Two hundred? How much light is sufficient? Are klieg lights necessary? Are plants of any kind permissible or is USC to chop down every tree and pull out each bush? Does it matter if the campus looks like a prison? Should everyone entering the campus be searched for weapons? Does every shop,

every store, every manufacturing plant, have to be patrolled by private guards hired by the owner? Does a landowner have to effectively close his property and prevent its use altogether? [Citation.] To characterize a landowner's failure to deter the wanton, mindless acts of violence of a third person as the 'cause' of the victim's injuries is (on these facts) to make the landowner the insurer of the absolute safety of everyone who enters the premises." (*Id*. at p. 437, fn. omitted; see also *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 483 [50 Cal.Rptr.2d 785]; *Thai v. Stang* (1989) 214 Cal.App.3d 1264, 1273 [263 Cal.Rptr. 202]; *Constance B. v. State of California* (1986) 178 Cal.App.3d 200, 211-212 [223 Cal.Rptr. 645]; *Noble v. Los Angeles Dodgers, Inc.* (1985) 168 Cal.App.3d 912, 918 [214 Cal.Rptr. 395].)

In *Saelzler v. Advanced Group 400, supra,* 25 Cal.4th 763, the Supreme Court approved and applied the reasoning of these decisions. There, the plaintiff, who was criminally assaulted while attempting to deliver a package at the defendant's apartment complex, alleged that better security measures would have prevented the assault. The court observed that proof of causation cannot be based upon speculation and conjecture, and that a mere possibility of causation is insufficient. (*Id*. at pp. 775-776.) To establish causation, the plaintiff must demonstrate some substantial link or nexus between omission and injury. (*Id*. at p. 778.) The plaintiff must show it was more probable than not that different security precautions would have prevented the attack. (*Id*. at p. 776.) In the absence of actual proof of causation, an expert's opinion that better security measures would have prevented the assault is nothing more than speculation and conjecture and is insufficient. (*Id*. at p. 777.) The court went on to reject the plaintiff's argument for a "common sense" or "practical approach" that would permit cause to be inferred from the hindsight observation that the injury occurred. (*Id*. at p. 778.) The court also rejected the suggestion that the burden of proof on the causation issue should be shifted to the defendant. (*Id*. at p. 780.) It is the plaintiff's burden to establish causation by competent evidence. (*Ibid*.)

The standard is no different simply because a school district is the defendant. ■ It has long been held that school districts are not the insurers of the physical safety of students. (*Dailey v. Los Angeles Unified Sch. Dist., supra,* 2 Cal.3d at p. 747.) To establish a right of recovery, a student must prove the traditional elements of actionable negligence, including causation. (*Ibid*.) In fact, the Government Code expressly requires proximate causation for recovery against a public entity. (Gov. Code, § 815.2, subd. (a).)

This does not impose an impossible burden on an injured student; the requirement merely precludes recovery where it cannot properly be said that

an injury has been caused by negligent supervision. For example, where a school fails to provide supervision and an injury results from conduct that would not have occurred had supervision been provided, liability may be imposed. (See *Dailey v. Los Angeles Unified Sch. Dist., supra,* 2 Cal.3d at p. 750; *Charonnat v. S. F. Unified Sch. Dist.* (1943) 56 Cal.App.2d 840, 844 [133 P.2d 643]; *Forgnone v. Salvador U. E. School Dist.* (1940) 41 Cal.App.2d 423, 426-427 [106 P.2d 932].) Where supervision is provided but the supervisor allows dangerous conduct to go on, liability may be imposed. (*Tymkowicz v. San Jose etc. School Dist.* (1957) 151 Cal.App.2d 517, 520 [312 P.2d 388]; *Buzzard v. East Lake School Dist.* (1939) 34 Cal.App.2d 316, 318-319 [93 P.2d 233].)

■ In this case, two students, Demarcus and Demario, formed a hasty plan to rob plaintiff of the marijuana that they believed he was carrying. To do so, they decided to lure plaintiff to a place where they would be out of the immediate view of campus supervisory personnel for at least a couple of minutes. Plaintiff was amenable to meeting them there. Once the participants were at that place, the events unfolded extremely quickly. Within one and a half minutes to two minutes of the time he had patrolled past the area, campus monitor Guzman returned and found plaintiff already injured.

Short of a prison-like lockdown situation, students who, for their own purposes, deliberately intend to escape the direct scrutiny of supervisory personnel will inevitably find a way to do so. (See *Ford v. Riverside City School Dist.* (1953) 121 Cal.App.2d 554, 557, 563 [263 P.2d 626].) When, in such a case, an injury occurs with such rapidity that supervisorial personnel could have no opportunity to discover and respond to the situation, then claims of abstract negligence will not support recovery.

We must reject appellants' suggestion that the mere fact a fight occurred is sufficient, in itself, to establish actionable negligence. (*Saelzler v. Advanced Group 400, supra,* 25 Cal.4th at p. 778.) Where, as here, a claim of ineffective supervision is not supported by competent proof of causation, summary judgment is appropriate. (*Id.* at p. 781.)

II

■ Appellants contend the trial court erred in excluding the declarations of their experts.

In one declaration, Steve Kaufer, a certified protection professional and security consultant, criticized defendant's security measures and opined that plaintiff would not have been attacked if there had been effective supervision in the F-wing during the lunch period. In another declaration, Thomas

A. Barry, a retired school administrator, criticized McClymonds's handling of matters involving Demarcus and opined that plaintiff would not have been attacked if there had been effective intervention with respect to Demarcus.

This is precisely the type of expert declaration that has been held insufficient to establish a cause of action for negligence. A party cannot rely upon an expert's opinion to establish duty, which is a question of law for the court. (*Asplund v. Selected Investments in Financial Equities, Inc.* (2000) 86 Cal.App.4th 26, 49-50 [103 Cal.Rptr.2d 34].) And while expert criticism of the defendant's security measures may establish abstract negligence, an expert's speculative and conjectural conclusion that different measures might have prevented an injury cannot be relied upon to establish causation. (*Saelzler v. Advanced Group 400, supra,* 25 Cal.4th at pp. 777-778; *Nola M. v. University of Southern California, supra,* 16 Cal.App.4th at pp. 429-430.)

In this case, plaintiff was injured as the result of the criminal plan of Demarcus and Demario, which included enticing plaintiff to a location beyond the immediate scrutiny of supervisory personnel, and through plaintiff's own willingness to go to such a location. While experts may be able to describe a better way of providing supervision, on this record they cannot establish causation. Thus, the trial court properly excluded the expert declarations from consideration.

DISPOSITION

The judgment is affirmed.

Blease, J., and Nicholson, J., concurred.