Filed 3/14/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| MARK FRANK HARDING, | |
| Plaintiff and Appellant, | G063109 |
| v. | (Super. Ct. No. 30-2021-01194095) |
| LIFETIME FINANCIAL, INC. et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Glenn R. Salter, Judge. Affirmed. Motion to augment denied.

Catanzarite Law Corporation, Kenneth J. Catanzarite and Tim James O'Keefe for Plaintiff and Appellant.

Lydecker and Gabriel Reynoso for Defendants and Respondents.

\* \* \*

An imposter posing as investment advisor Daniel Corey Payne of Lifetime Financial, Inc. (Lifetime) stole more than $300,000 from Mark Frank Harding. Before this occurred, Lifetime had received several inquiries from other individuals about a potential imposter who was posing as Payne and asking for funds; Lifetime did not post a warning about the imposter on its website or take any other significant action.

After realizing he had been scammed, Harding sued Lifetime and others for negligence and related claims. Although his theory of recovery changed over the course of the litigation, his most recent argument is that defendants, as registered investment advisors, had a duty to post a warning about the imposter on their website and report the complaints to the Financial Industry Regulatory Authority (FINRA). According to Harding, had defendants done so, he would have seen the warning and not have transferred funds to the imposter.

The trial court granted summary judgment, finding defendants owed no duty to Harding. The parties agreed at oral argument that this is a question of first impression. After considering the matter de novo, we agree with the trial court and affirm the judgment.

FACTS

Defendant Lifetime Paradigm, Inc. (LPI) is a financial advisory firm that provides financial planning, consulting, and coaching services to its clients. Defendant Lifetime provides investment advisory services to LPI clients. Defendant Randall Albert Luebke founded LPI and Lifetime and serves as the president of both companies.

Defendant Daniel Cory Payne worked as an agent for LPI and Lifetime from 2018 to 2022. Payne used his middle name, Cory, when communicating with LPI clients, as reflected by his company e-mail,

2

Cory.Payne@lifetimeparadigm.com. His LPI business card similarly identified him as "Cory Payne."

In February 2020, plaintiff Mark Frank Harding was notified that the financial company he was dealing with, Bridge Capital Associates, was planning to cease trading. Later that month, Harding received a telephone call from an imposter who identified himself as "Daniel Cory Payne," who claimed to be a representative of Lifetime, which he explained was the brokerage company taking over the Bridge Capital accounts.[1] The imposter asked Harding to forward certain trading details so he could check them against his own records, and Harding did so. Over the next four or five weeks, the imposter and Harding spoke on the phone several times, and the imposter claimed he could assist Harding with financial transactions and investments.

In mid-April 2020, Harding went online to research Daniel Cory Payne and Lifetime. He confirmed the real Daniel Cory Payne and Lifetime were registered with the appropriate governing authorities, and he double-checked Payne's central registration depository advisor number. Harding was impressed by LPI's website and the information about Payne. He did not find any negative information online about either Payne or Lifetime.

A few days later, the imposter sent Harding an e-mail asking him to complete an online client agreement to open an account, and Harding did so. The imposter's signature line in this e-mail listed the sender as "Daniel

---

[1] To avoid confusion with the real Daniel Cory Payne, we refer to this person as the "imposter" rather than use the name he gave to Harding.

Payne" (not Cory Payne) and listed his e-mail address as dcpayne@lifetimefinancialinc.com (not Cory.Payne@lifetimeparadigm.com).

Over the next three months, Harding made a series of transfers to the imposter for the purchase of stock. All in all, Harding transferred over $300,000, which represented nearly all of his retirement savings.

In September 2020, Harding discovered the imposter's e-mail address and telephone number were no longer active. The following month, he e-mailed Luebke at Lifetime to inquire about Daniel Payne. (This was the first time Harding communicated directly with anyone at the real Lifetime.) In his e-mail, Harding explained that he was an account holder with Lifetime, he had been dealing with Daniel Payne, his e-mails and telephone calls to Payne were not going through or being returned, and he was owed "a rather large amount of money."

Luebke responded that "Daniel Payne does not work for my company, Lifetime Financial."[2] In a follow-up e-mail to Harding, Luebke pointed out that the imposter (whom Harding had copied on his e-mail to Luebke) was using the e-mail address of dcpayne@lifetimefinancialinc.com. Luebke also explained that Lifetime does not own the <lifetimefinancialinc.com> domain name and instead uses <lifetimeparadigm.com>.

That was not the first time Luebke or Lifetime had received word about an imposter using Daniel Cory Payne's name in an attempt to open accounts. In spring 2020, around the same time that the imposter started

---

[2] Luebke later conceded at deposition that he should have said "'your' Daniel Payne does not work for [Lifetime]," and explained that he knows Payne as Cory, not Daniel.

communicating with Harding, they had received at least three similar notifications, all from nonclient third parties living abroad.

The first two inquiries were received in mid-March 2020. A.M. contacted Luebke via LinkedIn and reported that a person identifying himself as "Daniel Payne" had asked him to open an account with Lifetime; A.M. messaged Luebke because he feared it was a fraud and he wanted to verify that this person was in fact with Lifetime. Around that same time, P.K. contacted Luebke by e-mail and telephone and informed him that he was contacted by a person identifying himself as Daniel Payne. Luebke was initially suspicious of these communications, both of which came from nonclients in other countries; he was concerned they were a "phishing" expedition, or a fraudulent attempt to get information about the real Cory Payne.

Then, in April 2020, C.B and S.B. notified LPI through its website that they had been contacted by someone who identified himself as Daniel Payne of Lifetime; they inquired whether that person actually worked for Lifetime. Luebke responded by e-mail that "Daniel Payne does not work for Lifetime Financial. Any communication with him should be considered nefarious and communications with him should be stopped immediately." Luebke then advised his assistant and Payne that "[t]his is the 3rd or 4th contact we have received from someone about Daniel Payne. I think that we need to do something to protect ourselves." Despite Luebke's expressed concern, Lifetime and LPI did nothing to warn authorities or the general public about the solicitations.

According to Harding, if Lifetime and LPI had posted a warning on their website about the imposter, or if they had reported the matter to

5

FINRA, Harding would have realized the person he was communicating with was an imposter, and he would not have lost his life savings.

PROCEDURE

Harding initially filed a complaint against Lifetime, LPI, Luebke, and the real Daniel Cory Payne (collectively, Defendants), asserting claims for breach of written contract, money had and received, negligence, breach of fiduciary duty, fraud, and negligent misrepresentation. His complaint alleged that the named Defendants (not the imposter) had taken and refused to return his funds.

Defendants moved for summary judgment, asserting among other things that Harding could not prove Defendants owed him any duty of care. In their motion, Defendants explained that the person Harding dealt with was an imposter, and Harding had therefore never been an actual client of Defendants. Because Defendants never contracted with Harding to act as his financial advisors or in any other capacity, they contended, they owed him no duty.

In his opposition to the motion, Harding shifted gears on his theory of the case. Contrary to his complaint (which alleged that Defendants had stolen his money), Harding acknowledged in his opposition that a third-party imposter had taken his funds, but he asserted Defendants had breached their duty to warn prospective clients like Harding that an imposter was posing as Payne.

Harding included with his opposition a declaration from his securities expert, Mason Dinehart, who opined that Luebke and Payne owed a duty under the Investment Advisers Act of 1940 not just to existing clients but also to prospective clients like Harding. According to Dinehart, when Luebke received complaints about a possible imposter in March and April

6

2020, he had a duty to post about the potential fraud on LPI's website and on Business Wire, and to contact law enforcement and California and federal regulators.

Harding also requested that the summary judgment hearing be continued so he could conduct discovery and file an amended complaint. The trial court granted Harding's continuance request and set a supplemental briefing schedule. The court noted that Harding "appears to have made a tactical decision to abandon the allegations in the complaint as to what happened and why the defendants are liable. Instead, his opposition has glommed onto a new and different [third party imposter] theory that appears unsupported by any citation to authority that is [o]n point." The court therefore directed the parties to submit points and authorities "citing any published authority (state or federal anywhere in the country) addressing whether these defendants had any legal duty to take the actions referred to by plaintiff's expert, Mason Dineh[art]."

Harding took Luebke's deposition the following month. He then filed a supplemental opposition that included some additional evidence, such as Lifetime's compliance manual, which required Defendants to immediately call federal law enforcement when "conducting due diligence," and FINRA Rule 4530, which requires members to "promptly report to FINRA" if the member "is the subject of any written customer complaint involving allegations of theft or misappropriation of funds or securities or of forgery." Harding submitted a declaration from cybersecurity expert Todd A. Spight, who opined that LPI should have posted a fraud alert on its website. Dinehart also submitted a supplemental declaration in which he opined that FINRA Rule 4530 required Defendants to alert FINRA about the imposters after they received multiple complaints from prospective customers.

On the day before the continued hearing on Defendants' summary judgment motion, Harding filed a motion for leave to file a first amended complaint that would assert only claims for negligence and negligent supervision and omit the remaining causes of action. The proposed amended complaint was based on the third-party imposter fact pattern; it also expressly referenced FINRA Rule 4530 as a basis for Defendants' alleged duty to warn. When the summary judgment motion came on for hearing the next day, at Harding's request and over Defendants' objection, the trial court again continued the hearing so it could be heard simultaneously with Harding's motion for leave to amend.

At the continued hearing, after receiving Harding's counsel's assurances that the motion to amend was not being used to delay the hearing on the summary judgment motion, the trial court granted Harding's motion to amend and "deemed [the first amended complaint] filed as of now." The court then granted Defendants' summary judgment motion, finding Harding had not established Defendants owed him any duty.[3] Judgment was entered for Defendants, and Harding filed a notice of appeal.

DISCUSSION

I.

PRINCIPLES GOVERNING SUMMARY JUDGMENT

A trial court may grant summary judgment only if the moving papers establish there is no triable issue of material fact, and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c,

_____

[3] Defendants' motion to augment the record on appeal to include the reporter's transcript from this hearing is denied as moot; the reporter's transcript was designated by Harding and is already part of the record of appeal.

subd. (c).) A defendant moving for summary judgment bears the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (*Id.*, subd. (p)(2).) If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact. (*Ibid.*)

"In evaluating the summary judgment motion and opposition, the trial court 'must consider all of the evidence and all of the inferences drawn therefrom.' [Citation.] The moving party's evidence is strictly construed, while the opponent's is liberally construed. [Citation.] All reasonable inferences must be drawn in favor of the opposing party and 'summary judgment cannot be granted when the facts are susceptible of more than one reasonable inference . . . .'" (*Blaylock v. DMP 250 Newport Center, LLC* (2023) 92 Cal.App.5th 863, 870.)

"'"We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."'" (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286.) We also review de novo whether a duty exists, which is a question of law. (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1142.)

"We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons. [Citation.] Even if the grounds entitling the moving party to a summary judgment were not asserted in the trial court, we must affirm if the parties have had an adequate opportunity to address those grounds on appeal." (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181.)

## II.

## PROCEDURAL ISSUES

Before considering the merits of Harding's appeal, we address a procedural issue. According to Harding, summary judgment was improper because the trial court granted his motion to file a first amended complaint immediately before granting Defendants' summary judgment motion. Harding contends the newly filed amended complaint superseded the original complaint that was the subject of Defendants' summary judgment motion, rendering summary judgment on the original complaint improper. Although this argument has some initial appeal, we are not persuaded given the history of proceedings in this case.

Generally speaking, "a court granting plaintiff leave to amend a cause of action should not at the same time attempt to summarily adjudicate material issues which underlie that same cause of action. After a cause of action is amended, the court may rule in favor of the defendant if, upon subsequent motion, or perhaps renewal of the earlier motion if appropriately framed, it is shown (a) that plaintiff simply cannot state a cause of action on the theory relied upon (in effect a judgment on the pleadings *without* leave to amend [citation] or (b) there are no triable material issues of fact which would permit recovery on that theory." (*Hejmadi v. AMFAC, Inc.* (1988) 202 Cal.App.3d 525, 536.)

Here, however, the factual narrative and legal theories embodied in the first amended complaint were extensively briefed in conjunction with Defendants' summary judgment motion on the original complaint. Although Harding's original complaint alleged that Defendants had taken and refused to return his funds, Defendants asserted in their summary judgment motion that Harding's losses were in fact caused by an imposter. Harding responded

10

to that imposter narrative in his opposition to the summary judgment motion and abandoned his original theory that it was Defendants who stole his money; indeed, the trial court noted as much during the first hearing on Defendants' motion and directed the parties to submit supplemental briefing on whether Defendants owed Harding a duty to warn about the imposter. Harding then submitted a supplemental opposition and extensive supplemental evidence in support of that theory. The parties therefore had every opportunity to litigate the duty issue as part of the summary judgment proceedings. Although the first amended complaint does contain more specific allegations about the imposter and Defendants' alleged breach of their duty to report the imposter under FINRA Rule 4530, the amended pleading does not materially change the issues at play, and the theory alleged in it was thoroughly briefed in the summary judgment proceedings.

Given how this case unfolded, we cannot see how the outcome would have been any different had the trial court denied the summary judgment motion and forced Defendants to file a new motion challenging the amended complaint. Thus, any procedural error was not prejudicial (and may in fact have been invited by Harding).

### III.

#### DUTY TO REPORT

That brings us to the merits of Harding's appeal. The facts are not disputed. By mid-April, Defendants had received multiple inquiries from third parties (not existing customers) about a person claiming to be Daniel Payne with Lifetime who was attempting to open accounts. Harding's claims against Defendants hinge on whether Defendants owed Harding, a nonclient, a duty to report those inquiries on their website or to notify FINRA that an imposter was using Payne's name and identity to solicit funds.

11

"'[A]s a general matter, there is no duty to act to protect others from the conduct of third parties.'" (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 214.) We have found no statutory or case authority holding that an investment advisor owes a duty to nonclients to post a notice on its website or notify law enforcement that someone has been impersonating the investment advisor. Harding cites none.

Harding argues that Defendants owed a duty to report the inquiries about the imposter to FINRA under FINRA Rule 4530. We cannot agree. Assuming arguendo that courts may consider FINRA rules in determining whether a member defendant had a particular duty (see *Milliner v. Mut. Securities, Inc.* (N.D.Cal. 2016) 207 F.Supp.3d 1060, 1066), FINRA Rule 4530 does not apply here.

FINRA Rule 4530 requires FINRA members to "promptly report to FINRA . . . after the member knows or should have known . . . [that] [¶] (1) the member or an associated person of the member: [¶] . . . [¶] (B) is the subject of any written customer complaint involving allegations of theft or misappropriation of funds or securities or of forgery." (Rule 4530(a)(1)(B).) Section .08 of the Rule's Supplementary Material adds that "[f]or purposes of paragraph (a)(1)(B) of this Rule, a 'customer' includes any person, other than a broker or dealer, with whom the member has engaged, or has sought to engage, in securities activities."

Reading these provisions together, in order for Defendants to have had a reporting duty under this rule, they would have had to receive a written complaint which alleged Defendants engaged in theft, misappropriation of funds or securities, or forgery, and that written complaint would have had to come from a person whom Defendants engaged or sought to engage in security activities. That is not what happened here.

12

Defendants received written inquiries about a *third party* who was impersonating them; they themselves were not "the subject of any written customer complaint involving allegations of theft or misappropriation of funds or securities or of forgery." Further, the written inquiries came from nonclients—persons with no preexisting relationship with Defendants—who were trying to ascertain whether the imposter was affiliated with Defendants; the inquiries did not come from "customers" whom Defendants engaged or sought to engage in security activities.

Harding also relies on FINRA Rule 2210, which governs member communications with the public. This rule requires that such communications "be based on principles of fair dealing and good faith, . . . provide a sound basis for evaluating the facts in regard to any particular security," and not "omit any material fact or qualification if the omission, in light of the context of the material presented, would cause the communications to be misleading." (Rule 2210(d)(1)(A).) We find nothing in this rule that would impose an affirmative duty on Defendants to warn the general public about a third party impersonator.

The fact that Harding's retained experts offered a contrary opinion concerning the import of the FINRA Rules is of no consequence. "A party cannot rely upon an expert's opinion to establish duty, which is a question of law for the court." (*Thompson v. Sacramento City Unified School Dist.* (2003) 107 Cal.App.4th 1352, 1373.) Nor can a party create a triable issue of fact on the issue of duty through expert opinions, because again, the existence of a duty in a given factual situation is an issue of law for the court to resolve. (*Vulk v. State Farm General Ins. Co.* (2021) 69 Cal.App.5th 243, 259 fn. 6; *Swigart v. Bruno* (2017) 13 Cal.App.5th 529, 540 fn. 14.)

Harding alternatively suggests that Lifetime's compliance manual, which required Defendants to notify federal law enforcement of certain red flags that arise when "conducting due diligence or opening an account," created a duty to notify law enforcement about the imposter.[4] Again, we disagree. The inquiries about the imposter came from nonclients who had no relationship with Defendants; they did not arise in connection with any work being performed for existing or prospective clients. The provisions of the compliance manual therefore do not apply.

In the absence of any existing authority creating a duty for these Defendants to report this imposter, we decline the invitation to create such a duty in this case. (See *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 ["The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors"].)[5]

---

[4] The compliance manual reads: "When conducting due diligence or opening an account, we will immediately call Federal law enforcement when necessary, and especially in these emergencies: we discover that a legal or beneficial account holder or person with whom the account holder is engaged in a transaction is listed on or located in a country or region listed on the [Office of Foreign Assets Control] list, an account is held by an entity that is owned or controlled by a person or entity listed on the [Office of Foreign Assets Control] list, a customer tries to use bribery, coercion, or similar means to open an account or carry out a suspicious activity, we have reason to believe the customer is trying to move illicit cash out of the government's reach, or we have reason to believe the customer is about to use the funds to further an act of terrorism."

[5] We are sympathetic to Harding's plight as we recognize that financial scams and identity theft unfortunately are rampant in our society. But as we observed in *Huerta v. City of Santa Ana* (2019) 39 Cal.App.5th 41, "the Legislature is best suited" to investigate and determine whether public policy requires the creation of statutory liability here. (*Id.* at p. 49, fn. 4.)

14

As the trial court aptly put it, "The fundamental problem is that there is no fiduciary relationship [between Harding and Defendants]. Although Payne and his firm would owe a fiduciary duty to his or her customer as to investment decisions, [Harding] was not their customer. And [there is no] authority that holds a fiduciary relationship could arise merely because the imposter used Payne's name and credentials as a licensed investment advisor to perpetuate the fraud."

Our holding finds support in a long line of California cases which have held that banks owe "no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder." (*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1149; see *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.* (1996) 49 Cal.App.4th 472, 479 ["absent extraordinary and specific facts, a bank does not owe a duty of care to a noncustomer"]; see e.g., *Rodriguez v. Bank of the West* (2008) 162 Cal.App.4th 454, 463 [the defendant banks owed no duty of care to the plaintiff-attorney who was never a customer of the defendant banks, even though the plaintiff's office manager had forged the plaintiff's signature, opened bank accounts in the plaintiff's name, deposited money the plaintiff had received in trust, and stolen money from accounts].)

For these reasons, we conclude Defendants did not owe a duty to Harding to report on their website or to FINRA the inquiries they received about the imposter. Summary judgment for Defendants was therefore proper.

15

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

GOETHALS, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

GOODING, J.