[No. A064426. First Dist., Div. One. July 27, 1995.]

TRACY RAE SKINNER, a Minor, etc., Plaintiff and Respondent, v. VACAVILLE UNIFIED SCHOOL DISTRICT et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California rules of Court, rule 976.1, this opinion is certified for publication. The portions directed to be published follow.

**COUNSEL**

Dan G. Ryan for Defendants and Appellants.

James L. O'Dea for Plaintiff and Respondent.

**OPINION**

**NEWSOM, J.**—Vacaville Unified School District (hereafter School District) appeals a judgment awarding damages to a former student for injuries she suffered in an attack by another student. The plaintiff, Tracy Rae Skinner (hereafter Tracy or plaintiff), appearing through her guardian ad litem, Linda Skinner, alleged a cause of action for negligence against the School District and a separate cause of action for battery against her assailant, Carlos Patrick Orozco (hereafter Carlos). In a special verdict, the jury found the School District to be negligent and found damages of $97,101.05. Applying the principles of comparative fault, the jury found the School District liable for 60 percent of this amount. The jury found Carlos to be liable for the full amount of damages by reason of a battery. The School District alone appeals.

The incident occurred on October 2, 1990, during a volleyball game in a physical education class at Will C. Wood High School in Vacaville, California. The class was divided into six to eight teams of six or seven players who played on either side of a series of nets erected in the gymnasium. A single teacher was responsible for supervision of play. Tracy, a junior who was an outstanding athlete, was selected cocaptain of her team.

During the first game, Carlos, a freshman member of Tracy's team, angered his teammates by playing to lose; he would hit the ball in the wrong direction, knock the ball out of other players' hands, and serve wildly out of the court. According to a teammate, "just about the whole team was telling him to get it together." Another teammate recalled that Tracy "asked him if he wasn't going to play right to not play at all." About 10 to 15 minutes into the period, the teams reported the score of their first game to the physical education teacher and switched sides.

Tracy's account of what followed was generally corroborated by other witnesses. As she bent over to pick up the ball, she heard Carlos say, "Bitch, come on, bitch . . . ." Realizing that he was speaking to her, she walked toward him saying, "What's wrong with you?" He raised his hands to fight and pushed her. She again walked up to him and said, "I don't know what's wrong with you." He dared her to push him. She responded by flipping off his baseball cap. Enraged, he told her, "Push me again, bitch . . . ." According to cocaptain, Dolly Lowdermilk, Tracy then "touched his chest with one finger with a smile on her face, like it was a big joke . . . ."

At this point, Carlos hit Tracy twice on the jaw, breaking it in two places and inflicting severe and permanent injuries. She was required to undergo reconstructive surgery and a prolonged and painful convalescence. At the time of trial, she suffered from chronic facial pain and headaches as a result of the injury.

The confrontation between Tracy and Carlos erupted very quickly; estimates of the time between the end of the game to the assault varied from 20 to 30 seconds to over a minute and a half. Though Carlos raised his voice, the gymnasium was filled with loud voices of students playing volleyball. The evidence suggests that Carlos did not yell loud enough to make his voice easily distinguishable.

During this time, the physical education teacher, Thalia Puddy, was standing at a central location at a distance about 20 to 30 feet from Tracy's volleyball court. There was evidence indicating that she stayed in the same spot during the first game, though she commonly walks around the gymnasium and observes during class. Nobody complained to her about Carlos's play, and she did not notice any yelling or disruptive behavior in his court. Immediately before the incident, her view of the court was obstructed by several students who were standing around her to hand in their game scores. When Tracy fell to the ground after being hit, Puddy was the first to arrive at her side and immediately took charge of the situation by sending Carlos to the office and arranging for Tracy to be taken to emergency care.

In a separate line of testimony presenting the principal issues on appeal, plaintiff sought to prove that the principal, Frank Molina, and vice-principal, Morton Geivett, were negligent in the administration of discipline at the high school, stressing their failure to warn teachers of Carlos's proclivity toward fighting. It was undisputed that the administration did not inform Puddy of the boy's disciplinary history. For this reason, Tracy's counsel argued, Puddy was not given an opportunity to head off trouble by keeping closer supervision over him.

Since Will C. Wood High School was a former junior high school in transition to being transformed into a high school, Carlos attended the school in the eighth grade. The school had no written record of discipline imposed on Carlos during the first semester of his eighth grade year, but the second semester was crowded with incidents, resulting in total suspensions of ten days and in-house suspensions of an additional two and a half days. He was suspended twice for fighting—three days on February 9, 1990, and three and a half days on June 7, 1990. In addition, he received a suspension of a day and a half on March 21, 1990, for pushing a student and instigating a fight and an in-house suspension of one day on April 26, 1990, for deliberately bumping into another student. Other disciplinary incidents involved truancy, refusal to do work, harassing another student, and "defiant, disruptive, and disrespectful" conduct in class.

On September 18, 1990, the second day that Carlos attended Puddy's physical education class in his freshman year, he was involved in another fighting incident. Puddy recalled that he became engaged in an angry "confrontation" with another boy who accused him of poking his eye. Puddy "split" the two boys and sent them to separate areas in the office by different routes. Despite this precaution, Carlos encountered the other student in the administration office and attempted to fight him there. He received a suspension of three days.

Plaintiff's counsel questioned the school administrators, Molina and Geivett, at length concerning the school administration's response to Carlos's disruptive conduct. Apart from the suspensions noted above, the administration arranged one conference with his father and made several other contacts with the father and grandparents by letter or telephone. The administration also enrolled him in an "Opportunity Program," a special two-hour class for at-risk students, but it never referred him to a school psychologist or offered a behavioral contract.

There was no record that any of the incidents appearing on Carlos's disciplinary record, including the three fights and the bumping and pushing incidents, had resulted in physical injury. The vice-principal, Geivett, said that he never made a point of warning teachers of his behavior, although he did discuss Carlos's behavior with certain teachers, particularly in connection with the Opportunity Program.

For her part, the physical education teacher, Thalia Puddy, testified that the incident on September 18, 1990, alerted her to Carlos's belligerent propensities: "Q. Uh, did you feel that you ought to keep an eye on him? A.

Well, yeah, you—if there's any kind of confrontation, you feel that way. You need to just keep your focus on and watch out, make sure he doesn't get in any other confrontations. Q. On the day he hit Tracy, you were keeping an eye on him? A. I would say I made—I made the best effort to. Q. What did you do to keep an eye on him in that first game? A. Oh, just be very observant, keep myself center pretty much most of the time within the realms of the gym."

. . . . . . . . . . . . . . . . . . . . . . . . . . . .*

The School District next maintains that the evidence does not support the jury's verdict. As a general principle of appellate review, "[i]n reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determina on as to whether there is any substantial evidence, contradicted or unce itradicted, which will support the conclusion reached by the jury." (C wford v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

More specifically, in reviewing a finding of negligence, ". . . this court is guided by the rule that the trier of fact determines whether a defendant's conduct satisfies the applicable standard of care. [Citations.] When reasonable minds may differ as to the reasonableness of defendant's conduct, neither the trial court nor an appellate court may substitute its own judgment and override the determination of the jury as the trier of fact. [Citation.] Accordingly, to find that the jury erred, this court would have to find . . . that 'no reasonable jury could reach a contrary conclusion.' " (*Pool* v. *City of Oakland* (1986) 42 Cal.3d 1051, 1061 [232 Cal.Rptr. 528, 728 P.2d 1163]; *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 130-131 [211 Cal.Rptr. 356, 695 P.2d 653]; *Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232, 244 [60 Cal.Rptr. 510, 430 P.2d 68].)

The jury found generally that the School District was "negligent in failing to protect Plaintiff." In reviewing the sufficiency of the evidence to support this finding, we will consider, first, the evidence regarding supervision of the physical education class and, second, evidence pertaining to the administration of discipline at the school. A line of cases has held that school districts may be found negligent for a lack of supervision or ineffective supervision of students on school premises. "California law has

---

*See footnote, *ante*, page 31.

long imposed on school authorities a duty to 'supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection. [Citations.]' The standard of care imposed upon school personnel in carrying out this duty to supervise is identical to that required in the performance of their other duties. This uniform standard to which they are held is that degree of care 'which a person of ordinary prudence, charged with [comparable] duties, would exercise under the same circumstances.' " (*Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747 [87 Cal.Rptr. 376, 470 P.2d 360]; *Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 513 [150 Cal.Rptr. 1, 585 P.2d 851].)

On the record in this appeal, we think it is highly unlikely that the jury could have premised its finding of negligence on the supervision exercised by the physical education teacher, Thalia Puddy. Charged with supervising a large class of 40 to 50 students, she placed herself in a central location 20 to 30 feet from the plaintiff's court. The first game of the period gave no indications of developing into a violent confrontation. Though Carlos deliberately played to make his team lose the game, he did not challenge or provoke any particular student. The confrontation with Tracy erupted suddenly while Puddy was collecting scores from other teams. She then rushed to the victim's side and effectively dealt with the situation. We do not think she can be faulted without imposing an unrealistically high standard of care on teachers that would in effect make them "insurers of the safety of children on the premises." (*Taylor* v. *Oakland Scavenger Co.* (1938) 12 Cal.2d 310, 317 [83 P.2d 948].) The plaintiff impliedly conceded the point by choosing not to argue Puddy's negligence to the jury. In closing arguments, plaintiff's very able counsel instead praised her as "a serious, conscientious woman, doing the best she can." The evidence fully supports this evaluation.

In alleging that her injuries were caused by the negligence of the school administrators in enforcing discipline, plaintiff raises a novel issue without precedent in California. We have found no case involving an alleged connection between a student's injuries in a conflict with another student and the school's prior actions in disciplining the other student. In other jurisdictions, the few cases that we have found considering closely analogous claims have all affirmed judgments for the defendant, either finding no evidence of negligence (*McDonald* v. *Terrebonne Parish School Board* (La.Ct.App. 1971) 253 So.2d 558; *Williams* v. *Columbus Bd. of Edn.* (1992) 82 Ohio App.3d 18 [610 N.E.2d 1175]) or that the school administrators were protected by the state discretionary immunity statute. (*Cady* v. *Plymouth-Carver Regional School* (1984) 17 Mass.App. 211 [457 N.E.2d 294].)

In analyzing the issue, we can separate from our consideration a broad range of evidence, admitted without objection, that clearly does not support the verdict. The verdict cannot be supported by evidence relating to (a) ancillary services, such as psychological counseling, (b) contacts with parents, (c) disciplinary referrals for nonconfrontational conduct, such as truancy and failure to work, and (d) choice of disciplinary alternatives, such as behavioral contracts. In each of these areas, the record contains no evidence from which the jury could infer a causal relationship between plaintiff's injuries and the actions of the administration.

Similarly, the verdict cannot be supported by evidence, again admitted without objection, relating to the School District's failure to expel Carlos before the incident. The power to expel students from public schools has been entrusted to the governing board of the school district, which must exercise this power pursuant to statutory guidelines (Ed. Code, §§ 48912-48915.5) and its own rules and regulations. (Ed. Code, § 48918.) Accordingly, the decision falls squarely within the discretionary immunity provision of Government Code section 820.2. The decision to expel entails "the resolution of policy considerations, entrusted by statute to a coordinate branch of government, that compels immunity from judicial reexamination." (*Johnson* v. *State of California* (1968) 69 Cal.2d 782, 795 [73 Cal.Rptr. 240, 447 P.2d 352], fn. omitted.)

The question of the sufficiency of the evidence narrows to the category of evidence on which plaintiff in fact placed its chief reliance in arguments to the jury—evidence offered to prove that the school administration breached a duty to protect students under its supervision by failing to warn the physical education teacher of Carlos's disciplinary record. Plaintiff argues that the School District's duty to warn can be based both on statute and the general principles of negligence. We consider first the statutory issue.

Government Code section 815.6 provides that a government entity may incur liability for breach of a mandatory duty imposed by statute: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

Education Code section 49079 may impose on a school district a mandatory duty to inform teachers of a student's record of physical violence. The statute, first enacted in 1989, was greatly expanded by 1993 amendments. As

it read in 1990, subdivision (a) of the statute provided in pertinent part: "(a) A school district shall inform the teacher of every student who has caused, or who has attempted to cause, serious bodily injury or injury, as defined in paragraphs (5) and (6) of subdivision (e) of Section 243 of the Penal Code, to another person. The district shall provide the information to the teacher based on any written records that the district maintains or receives from a law enforcement agency regarding a student described in this section."

With the approval of the School District, the trial court read to the jury the relevant portions of Education Code section 49079, together with the definitions of "injury" and "serious bodily injury" in Penal Code section 243. The court did not, however, instruct the jury on the requirements of proximate cause incorporated in Government Code section 815.6.

In our opinion, this fragmentary instruction did not submit the issue of mandatory duty liability to the jury. Education Code section 49079 does not itself state the elements of liability. ██ ██ "[A] three-prong test must be satisfied to establish a basis for public entity liability under Govt C § 815.6 [citation]: [¶] (a) An enactment . . . must impose a mandatory, not discretionary, duty . . . ; [¶] (b) The enactment must intend to protect against the kind of risk of injury suffered by the plaintiff . . . ; and [¶] (c) The breach of the mandatory duty must be a proximate cause of the plaintiff's injury . . . ." (Government Tort Liability Practice (Cont.Ed.Bar 1992) §§ 2.71-2.81, pp. 146-159.) The third element of liability is a question of fact which must be submitted to the jury. (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 967, pp. 356-357.) By failing to instruct on the requirement of proximate cause, the court did not effectively submit to the jury the question of mandatory duty liability under Government Code section 815.6. Therefore, we conclude that the verdict cannot be upheld on this ground.

There remains the question whether the evidence supports the verdict against the School District under general principles of negligence. (Gov. Code, § 815.2.) The initial question for our determination is whether the School District breached a duty to Tracy in failing to warn her physical education teacher of Carlos's disciplinary record in the eighth grade.[2] ██ "While the question whether one owes a duty to another must be decided on a case-by-case basis, [fn. omitted] every case is governed by the

---

[2]Since the issue was not raised on appeal, we do not reach the question whether the school administration's policy in notifying teachers falls in whole or in part within the discretionary immunity provisions of Government Code section 820.2. (See *Biggers* v. *Sacramento City Unified Sch. Dist.* (1972) 25 Cal.App.3d 269 [101 Cal.Rptr. 706].)

rule of general application that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct. [Citation.] However, foreseeability of the risk is a primary consideration in establishing the element of duty. . . . [¶] While duty is a question of law, foreseeability is a question of fact for the jury." (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]; *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 740 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

Although we have found no case involving a school district, the courts have upheld causes of action against other public entities based on failure to warn third persons of the violent tendencies of persons under their care.[3] In *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425, a patient confided an intention to kill another student to a psychologist employed by the university hospital. The psychologist referred the matter to police but did not actually warn the other student. The patient later carried out his intention. Holding that the complaint of the victim's parents stated a cause of action against the university, the court reasoned that when a therapist determines "that a patient poses a serious danger of violence to others, he bears a duty to exercise reasonable care to protect the foreseeable victim of that danger." (*Id.* at p. 439.) Under appropriate circumstances, this duty may require the therapists to take steps to warn the "foreseeable victim."

Again, in *Johnson* v. *State of California, supra,* 69 Cal.2d 782, the California Youth Authority placed a youth in a foster home without notifying the foster parent of his " 'dangerous propensities.' " (*Id.* at p. 785.) The Supreme Court held that the foster parent's complaint for personal injuries stated a cause of action: ". . . the state owed a duty to inform Mrs. Johnson of any matter that its agents knew or should have known that might endanger the Johnson family; at a minimum, these facts certainly would have included 'homicidal tendencies, and a background of violence and cruelty' as well as the youth's criminal record." (*Id.* at p. 786.)

 Under the limited scope of appellate review, we consider only whether the jury could reasonably find that the duty to avoid foreseeable

---

[3]In a separate assignment of error, the School District argues that the trial court erred in allowing plaintiff to question the principal, vice-principal, and physical education teacher regarding the dissemination of information about Carlos's proclivity. We consider that the line of inquiry was relevant under the *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334] and *Johnson* v. *State of California, supra,* 69 Cal.2d 782 precedents discussed below. Whatever the evidence may show in the present case, a School District may breach its duty of care under appropriate circumstances where administrators fail to give teachers information that they need to protect students under their supervision from attacks by other students.

harm required the school administrators to warn the physical education teacher of Carlos's propensity for fighting as reflected in his disciplinary record. The issue is very close. The youth had not inflicted physical injury on other students, but still had shown an inordinate tendency to engage in mutual combat that often led to injuries. Giving full latitude to the jury to draw all reasonable inferences from the evidence, we conclude that the evidence would support a finding that the school administrators breached their duty of care toward students under their supervision by failing to notify the physical education teacher of Carlos's record of fighting.

The finding of causation, however, was still more tenuous. California has now definitively adopted the substantial factor test of Restatement Second of Torts, section 431. (*Mitchell* v. *Gonzales* (1991) 54 Cal.3d 1041, 1052 [1 Cal.Rptr.2d 913, 819 P.2d 872].) As stated in BAJI No. 3.76, "[a] cause of injury, damage, loss or harm is something that is a substantial factor in bringing about an injury, damage, loss or harm." The plaintiff has the burden of proving causation by a preponderance of the evidence. (Rest.2d Torts, § 433B.) Though we are obliged to uphold a finding based on any reasonable inference (*Fennessey* v. *Pac. Gas & Elec. Co.* (1942) 20 Cal.2d 141 [124 P.2d 51]), the determination of causation in this context presents peculiar uncertainties. It may be true that some knowledge of a student's potential for troublemaking can aid a teacher in maintaining order, but the teacher's opportunity to intervene in advance of fighting may still be limited, and advance knowledge of student propensities is only one of many factors that may enable him or her to forestall trouble. Where a claim of liability, is premised on the administration's failure to inform a teacher of a student's disciplinary record, the finder of fact must engage in a difficult inquiry into whether the teacher's lack of this specific information was a substantial factor in bringing about the harmful conflict.

The value to a teacher of information about a student's prior disciplinary record will vary with the circumstances of a particular class. In many instances, the teacher may have an opportunity to observe the student that makes the information superfluous or nearly so. This was clearly the case here. The physical education teacher, Thalia Puddy, *independently* learned of Carlos's volatile nature when a conflict with another student occurred about two weeks before the plaintiff's injury. The confrontation, which developed into a physical struggle in the administration office, conveyed the student's potential for troublemaking far more effectively than the dry communication of his eighth grade disciplinary record. Puddy in fact testified that the incident prompted her to keep an eye on him. While it is possible that knowledge of his eighth grade record would have somewhat intensified her

vigilance, it is quite another thing to conclude that the absence of this information was a substantial factor in bringing about the injury. We conclude that no reasonable jury could draw this inference.

The plaintiff's allegation that the negligence of the School District in administering discipline was a cause of her injury presented a novel issue on which the court and the parties had little specific guidance. The jury received a mass of irrelevant evidence and an incomplete instruction on Education Code section 49079 that could only have prejudiced it against the School District. Although we cannot assign error in the absence of timely objections, we look only to the relevant evidence and the applicable rules of law in evaluating the sufficiency of the evidence. The record here does not contain the necessary support for the jury's finding on causation.

The judgment is reversed. Costs to appellants.

Strankman, P. J., and Dossee, J., concurred.