ALEX G. a minor By and Through Dr. STEPHEN G., his guardian ad litem; Dr. Stephen G.; and Helen G., Plaintiffs,

v.

BOARD OF TRUSTEES OF DAVIS JOINT UNIFIED SCHOOL DISTRICT et al., Defendants.

No. CIV. S03–2258DFLDAD.

United States District Court, E.D. California.

July 30, 2004.

Bob N. Varma, Varma and Clancy, Sacramento, CA, for Plaintiffs.

Gregory Alan Wedner, Lozano Smith, San Rafael, CA, for Defendants.

## MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

Plaintiff Alex G. is a school-age child who is alleged to be autistic and eligible for special education services under the Individuals with Disabilities Education Act ("IDEA"). He and his parents, Dr. Stephen G. and Helen G., assert claims against the Davis Joint Unified School District and a number of its administrators and educators. Defendants move to dismiss plaintiffs' claims under the IDEA, state tort law, and 42 U.S.C. § 1983. The motion is GRANTED.

### I. Statement of Facts & Procedural History

Alex has been diagnosed with Autism Spectrum Disorder. (FAC ¶ 1.) He had already been considered eligible for education services and had an individual education plan ("IEP") from another school when he enrolled in the District at the start of the 2001–2002 school year. (Id. ¶ 21.) Alex was placed in a regular classroom at Valley Oak Elementary School while receiving additional educational services and support. (Id. ¶ 22.) Under Alex's IEP, the District formulated a behavior intervention plan that called for educators or other District employees to physically restrain Alex. (Id. ¶ 23.) Though plaintiffs do not reveal why physical restraint might have been considered necessary, defendants contend that it was to contain Alex's violent outbursts. (Mot. at 2.) During the summer of 2002, plaintiffs allege that Alex's parents withdrew their consent for any behavior plan that called for physical restraint but that defendants continued to restrain Alex after the consent was withdrawn. (FAC ¶¶ 25, 27–29.)

On December 4, 2002, Alex's parents requested an administrative hearing regarding Alex's special education program. (Id. ¶ 31.) His parents and the District settled the matter on January 31, 2003. (Id.) The settlement agreement set out the components of a new IEP for Alex for the remainder of the 2002–2003 and subsequent school years. (Id. ¶ 34.) Plaintiffs allege that Alex's teacher Penny Dwyer refused to abide by the settlement agreement's terms and that the other defendants either did nothing in response or ratified Dwyer's actions. (Id. ¶ 35.) On April 18, 2003, the District obtained a temporary restraining order in Yolo County Superior Court barring Alex from public school. (Id. ¶ 36.) Plaintiffs allege that the District obtained the TRO through the use of inaccurate or false declarations from several individual defendants. (Id. ¶ 37.) On April 21, 2003, Alex's parents requested another administrative hearing to challenge Alex's special education program. (Id. ¶ 38.) The hearing took place on July 31, 2003, and the hearing officer shortly thereafter issued a written decision. (Id. ¶ 41.) Plaintiffs were only partially successful in this administrative hearing. (Id. ¶ 42.) Plaintiffs filed this complaint on December 24, 2003.

### II. Analysis

#### A. IDEA Claim

Defendants move to dismiss plaintiffs' IDEA claim against the District's Board of Trustees. (Mot. at 5.) Because plaintiffs do not oppose this motion, the claim against the Board is DISMISSED. However, plaintiffs' IDEA claim against the District itself remains.

#### B. Section 1983 Retaliation Claim

Plaintiffs' assert a claim under § 1983 for "retaliation." (FAC ¶ 65.) However, plaintiffs fail to identify a constitutional or statutory provision that was violated by this alleged retaliation. Because § 1983 does not itself grant any

substantive rights, plaintiffs must identify the source of any right they seek to enforce. Therefore, this claim is DISMISSED without prejudice.

### C. Section 1983 IDEA Claim

■ Plaintiffs assert a claim under § 1983 for violation of the IDEA. (FAC ¶¶ 53–56.) Defendants argue that the IDEA does not create private rights that may be enforced through § 1983. (Mot. at 13–14.)

■ A federal statute can create a right enforceable through § 1983 if: (1) Congress intended the provision to benefit the plaintiff; (2) the right is not overly "vague and amorphous;" and (3) the statute unambiguously imposes a binding obligation on the states. *Blessing v. Freestone,* 520 U.S. 329, 340–41, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997); *Clayworth v. Bonta,* 295 F.Supp.2d 1110, 1119 (E.D.Cal. 2003). The IDEA almost certainly meets these criteria. However, even where these criteria are met, the statute cannot be enforced through § 1983 where Congress has demonstrated a contrary intent. *Blessing,* 520 U.S. at 341, 117 S.Ct. 1353. This may occur expressly or, more commonly, impliedly, by Congress' "creat[ion][of] a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 285 n. 4, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) (quoting *Blessing,* 520 U.S. at 341, 117 S.Ct. 1353).

Determining whether Congress intended to allow plaintiffs to enforce the IDEA through § 1983 is a complicated inquiry. In 1984, the Supreme Court in *Smith v. Robinson,* 468 U.S. 992, 1009, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), decided that the predecessor to the IDEA was the ex-

clusive mechanism for pursuing claims for a right to free appropriate public education.[1] The Court found the IDEA's remedies sufficiently comprehensive that they displaced any independent remedies otherwise available under the 14th Amendment or the Rehabilitation Act. *Id.* at 1012–13, 104 S.Ct. 3457. In response, Congress amended the IDEA to state that "[n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, … title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities." 20 U.S.C. § 1415(*l*). This language apparently rejects the Supreme Court's holding in *Smith* that the IDEA is the exclusive vehicle for enforcing the educational claims of disabled children. The statute now makes clear that disabled children may assert any independent rights they may have under the Constitution or other statutes "protecting the rights of children with disabilities" (such as the Rehabilitation Act or the ADA). But it does not follow that § 1415(*l*) confers a right of action under § 1983 to enforce the IDEA itself.

Section 1983 is not among the statutes specifically named by Congress in § 1415(*l*). Neither is it a statute "protecting the rights of children with disabilities." Thus, "[n]othing in section [1415(*l*)] overrules the Court's decision in *Smith* to the extent it held that Congress intended IDEA to provide the sole remedies for violations of that same statute. If Congress meant to overrule *Smith* on this significant point, it certainly chose an oblique and essentially implausible means of doing so." *Sellers v. Sch. Bd. of Manassas,* 141 F.3d 524, 530 (4th Cir.1998); *see*

---

1. For simplicity, the court will hereinafter refer to all incarnations of this statute as the IDEA. It has also been known as the EHA and EAHCA. *See Emma C. v. Eastin,* 985 F.Supp. 940, 942 n. 1 (N.D.Cal.1997).

*also Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1273 (10th Cir.2000).

Some courts, however, have interpreted the amendment as representing specific Congressional authorization of § 1983 suits to enforce the IDEA. *See W.B. v. Matula*, 67 F.3d 484, 494 (3d Cir.1995) ("In enacting [§ 1415(*l*)], Congress specifically intended that [IDEA] violations could be addressed by § 504 [of the Rehabilitation Act] and § 1983 actions, as the legislative history reveals."); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir.1987) ("In light of this clear legislative history, we hold that parents are entitled to bring a § 1983 action based on alleged violations of [the IDEA]."); *Emma C. v. Eastin*, 985 F.Supp. 940, 945 (N.D.Cal.1997) ("Congress has specifically authorized § 1983 actions predicated on the IDEA."). These courts have relied heavily upon the legislative history of the amendment but have misconstrued it.

There are a number of references to § 1983 in the legislative history of § 1415(*l*). However, none of these references specifies that a plaintiff may enforce the IDEA—as opposed to other statutes or the Constitution—through § 1983. For instance, the House Conference report stated that "[i]t is the conferees' intent that" § 1415(*l*) will govern "actions brought under 42 U.S.C. § 1983." H.R. Conf. Rep. No. 99–687, at 7, *reprinted in* 1986 U.S.C.C.A.N. 1807, 1809. The House report stated that "since 1978, it has been Congress' intent to permit parents or guardians to pursue the rights of handicapped children through EHA, section 504, and section 1983" and that "Congressional intent was ignored by the U.S. Supreme Court" in *Smith*. H.R. Rep. 99–296, at 4 (1985). Neither of these statements clarifies that § 1983 is a vehicle for enforcing the IDEA. Moreover, the House Report discussed how "[i]n 1971 and 1972 two landmark cases established the constitu-

tional rights of handicapped children to a free appropriate public education," citing *Pennsylvania Association of Retarded Children v. Pennsylvania*, 343 F.Supp. 279 (E.D.Pa.1972) and *Mills v. Board of Education of the District of Columbia*, 348 F.Supp. 866 (D.D.C.1972). As the report described these decisions, they held that "[s]ection 1983 prohibits, among other things, an agency acting under color of state law from abridging a handicapped person's rights under the Constitution." *Id.* at 3. Specifically, both of these cases dealt with rights secured by the Due Process Clause and the Equal Protection Clause. *Penn. Ass'n*, 343 F.Supp. at 295, 297; *Mills*, 348 F.Supp. at 874–75. Neither case, nor the House Report discussing them, mentioned enforcement of IDEA provisions through § 1983.

The statements in the legislative history about actions under § 1983 should be read in light of the discussion of the above cases. Thus, when Congress referred to suits under § 1983, it referred to suits to enforce rights secured independently of the IDEA by the Constitution. This interpretation of the legislative history fits well with the text of § 1415(*l*), which mentions rights and remedies available under "the Constitution" but not § 1983. It also fits with the Congressional purpose of overruling *Smith*, which had held that plaintiffs could not bring constitutional claims under § 1983 if those claims dealt with the same rights as the IDEA. *Smith*, 468 U.S. at 1009, 104 S.Ct. 3457 ("As petitioners emphasize, their § 1983 claims were not based on alleged violations of [the IDEA], but on independent claims of constitutional deprivations.") In light of the statutory language and the legislative history, it appears that Congress intended to permit § 1983 suits to enforce rights secured independently of the IDEA. But this does not mean that Congress also intended to allow plaintiffs to use § 1983 to enforce the

IDEA, thereby foregoing the various procedural and remedial requirements and restrictions that exist when a claim is brought under the IDEA.

The IDEA contains a carefully crafted administrative framework, which litigants must use to bring claims under the statute. It encourages school districts and parents to work together for the benefit of the child. When there is a disagreement about the IEP, the Act calls for voluntary mediation of claims. 20 U.S.C. § 1415(e). Unresolved claims are heard in the first instance by ALJs, who can bring to the dispute their specialized knowledge and experience in this technical area. *Id.* § 1415(f). Finally, the IDEA substantially limits the remedies that a successful plaintiff can receive. The right to attorney's fees is more limited than under 42 U.S.C. § 1988 and, most importantly, general compensatory damages are unavailable. *See* 20 U.S.C. § 1415(i)(3)(C)-(F); *Robb,* 308 F.3d at 1049. These provisions create a comprehensive enforcement scheme, directed at resolution, that is incompatible with enforcement through § 1983.

Indeed, the Supreme Court so held in *Smith.* Far from overruling it, the Supreme Court has continued to cite *Smith's* discussion of the IDEA's enforcement provisions as an example of a statute with a sufficiently comprehensive enforcement scheme to preclude its enforcement through § 1983. *See Blessing,* 520 U.S. at 347–48, 117 S.Ct. 1353; *Wilder v. Va. Hosp. Ass'n,* 496 U.S. 498, 521, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990); *Wright v. City of Roanoke Redev. and Hous. Auth.,* 479 U.S. 418, 424–25, 427, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). In *Department of*

*Education v. Katherine D.,* 727 F.2d 809, 820 (9th Cir.1983), the Ninth Circuit, before *Smith,* also held that the IDEA's enforcement scheme was sufficiently comprehensive to displace enforcement through § 1983. The Ninth Circuit has never overruled *Katherine D.* However, in *Robb v. Bethel School District,* 308 F.3d 1047, 1049–50 (9th Cir.2002), the court considered whether a plaintiff bringing a § 1983 claim for violation of rights secured by the IDEA must exhaust administrative remedies under that statute. This question assumes that the IDEA may be enforced through § 1983 in the first place.[2] The *Robb* court neither cited *Katherine D.* nor considered whether the IDEA's enforcement scheme is incompatible with enforcement through § 1983; thus, *Robb* does not overrule *Katherine D.*

*Katherine D.* and *Smith* are still binding precedents for the proposition that the IDEA's enforcement scheme is so comprehensive as to preclude its enforcement through § 1983. Congress has said nothing to the contrary. The text and legislative history of § 1415(*l*) both confirm that this provision was meant to allow plaintiffs to use § 1983 to enforce any constitutional rights that might overlap rights secured by the IDEA. Thus, Alex and his parents could have brought a § 1983 claim asserting that the district deprived him of his rights under the Due Process Clause and the Equal Protection Clause. But they cannot bypass the procedural and remedial limitations of the IDEA by repackaging their IDEA claim as one under § 1983, so that a jury may award them damages.

---

**2.** An earlier case, *Witte v. Clark County School District,* 197 F.3d 1271, 1274–75 (9th Cir. 1999), probably makes the same assumption. The plaintiff in *Witte* was asserting a § 1983 claim, but it is not clear that the claim was based on an IDEA violation, though that seems likely. Both *Robb* and *Witte* were con-

sidering whether a § 1983 claim for damages requires exhaustion of the IDEA's administrative procedures. They reached different answers, and there is a good argument that the cases are inconsistent. *See Robb,* 308 F.3d at 1056–57 (Berzon, J., dissenting).

### D. State Tort Claim

█ Defendants argue that plaintiffs' state tort claim is barred by the California Tort Claims Act, the statute of limitations, and a state immunity statute.[3] While plaintiffs could simply amend their complaint to state compliance with the Tort Claims Act, the other two arguments are not so easily disposed of. It is unclear whether, as a matter of California law, the continuing violation doctrine permits plaintiffs to avoid operation of the statute of limitations and base a claim on conduct that occurred in 2001. Moreover, state law also gives an employee of a public entity immunity from suits resulting from the exercise of his discretion. Cal. Gov't Code § 820.2. Prior decisions have held that school discipline decisions are discretionary. *See Skinner v. Vacaville Unified Sch. Dist.*, 37 Cal.App.4th 31, 39, 43 Cal. Rptr.2d 384 (1995); *Nicole M. v. Martinez Unified Sch. Dist.*, 964 F.Supp. 1369, 1389–90 (N.D.Cal.1997). However, these courts were considering the decisions of school principals and superintendents. *See Nicole M.*, 964 F.Supp. at 1389–90 ("Decisions by a school principal or superintendent to impose discipline on students and conduct investigations of complaints necessarily require the exercise of judgment or choice, and accordingly are discretionary, rather than ministerial, acts."). The actions of teachers and other educators might not be the sort of "careful and considered policy decisions" that create immunity. *See Caldwell v. Montoya,* 10 Cal.4th 972, 981, 42 Cal.Rptr.2d 842, 897 P.2d 1320 (1995). The statute of limitations and immunity issues are both novel and complex issues of state law. Therefore, the court declines to exercise supplemental jurisdiction over the state tort claim. *See* 28 U.S.C. § 1367(c)(1).

### III. Conclusion

Defendants' motion to dismiss is GRANTED. Plaintiffs' IDEA claim against the District's Board is DISMISSED with prejudice. Plaintiffs' § 1983 claim based upon the IDEA is DISMISSED with prejudice because the IDEA's comprehensive enforcement scheme is incompatible with its enforcement through § 1983. The state tort claim is DISMISSED, as the court declines to exercise jurisdiction over the claim. Finally, plaintiffs' § 1983 retaliation claim is DISMISSED without prejudice. Plaintiffs may file an amended complaint within 30 days that states what statutory or constitutional provision was violated by the alleged retaliation.

IT IS SO ORDERED.

---

**3.** Defendants argue that claims based upon conduct in 2001 and 2002 are barred by the January 30, 2003 settlement agreement. (Mot. at 9–10.) Plaintiffs' complaint alleges that the settlement agreement specifically allowed them to bring civil rights or tort claims. (FAC ¶ 33.) Because defendants did not provide the settlement agreement itself, the court must accept the complaint's representations of the document's contents.