Filed 7/3/23

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| NIGEL B., a Minor, etc., et al.,<br><br>    Plaintiffs and Respondents,<br><br>      v.<br><br>BURBANK UNIFIED SCHOOL DISTRICT et al.,<br><br>    Defendants and Appellants. | B317548<br><br>(Los Angeles County Super. Ct. No. 18STCV06782) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William D. Stewart, Judge. Reversed.

Liebman, Quigley & Shepard and Jack L. Sheppard; Greines, Martin, Stein & Richland, Edward L. Xanders and Nadia A. Sarkis for Defendants and Appellants.

Reily & Jeffery and Janine K. Jeffery; The Ehrlich Law Firm and Jeffrey I. Ehrlich for Plaintiffs and Respondents.

_____

\* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts IV.A and IV.C.

# I.  INTRODUCTION

After sustaining a knee injury during a mandatory eighth-grade physical education class's touch football unit, plaintiff[1] sued, among others,[2] defendants Burbank Unified School District (the District) and his physical education teacher, Dylan Washausen (Washausen).  A jury returned verdicts in plaintiff's favor against defendants, finding that the District breached a mandatory duty under the Education Code, Washausen was negligent, and plaintiff suffered resulting harm.

Defendants appeal from the judgment, contending:  there was insufficient evidence that the District's breach of a mandatory duty proximately caused plaintiff's injury; the special verdict form was fatally defective because it failed to specify whether the District's breach of a mandatory duty or Washausen's negligence was a substantial factor in causing plaintiff's injuries; the trial court erred by failing to instruct the jury on the primary assumption of risk doctrine; and the court erred by not allowing the jury to apportion fault to Gianni, thus precluding defendants from reducing liability for noneconomic damages.  We reverse and remand for the court to enter judgment in favor of the District and to hold a new trial limited to the issue of apportionment of fault between Washausen and Gianni.

---

[1]     Plaintiff is Nigel B., by and through his guardian ad litem.

[2]     Plaintiff also sued Gianni M. (Gianni), the student who intentionally ran into him, and Gianni's parents, but those defendants settled prior to trial.

2

## II. FACTUAL BACKGROUND

A. *Plaintiff's Relationship With Gianni*

In April 2018, plaintiff was a student in the eighth grade at John Muir Middle School (John Muir), which was part of the District. He was 14 years old, 4 feet 8 inches tall, and weighed approximately 70 pounds. Plaintiff participated in the school's show choir.

Gianni, a fellow eighth-grade student at John Muir, was 5 feet 5 inches tall and weighed 110 pounds. He and plaintiff were in the same show choir class. Gianni was "very disruptive" during the class and he and plaintiff had a "bully/quiet kid dynamic." Gianni made fun of plaintiff's high-pitched voice. He also falsely implied that plaintiff and another male student were in a gay relationship and used a gay slur to refer to plaintiff and the other student. These remarks embarrassed plaintiff. Gianni and his friends snickered and made fun of plaintiff's performances during show choir, which caused plaintiff to cry and walk off stage in the middle of his final performance.

Gianni and plaintiff were also in the same mandatory eighth-grade advanced physical education class.[3] During that class, Gianni made fun of plaintiff's lack of athleticism and sports knowledge. During kickball, Gianni repeatedly threw a ball at plaintiff "unnecessarily hard." Although Gianni's conduct bothered plaintiff, he did not complain.

Eloise L. (Eloise), a fellow student, observed Gianni's conduct toward plaintiff during show choir and physical

---

[3] Physical education teachers decided whether to place a student in the advanced or regular physical education class.

education class. She did not report Gianni's bullying of plaintiff to school officials.

B. *Physical Education Class*

In April 2018, Washausen had been teaching the physical education class at John Muir for 21 years. Washausen's class rotated through multiple sports in five-week units. Students could not opt out of a particular sport.

Students in Washausen's class routinely engaged in roughhousing and often directed "pushing, hitting, slapping, and the like" at plaintiff. One student, Richard E. (Richard), routinely pushed plaintiff during class. In October 2017, during an ultimate frisbee game, Richard grabbed and twisted plaintiff's arm, and asked plaintiff if he wanted to die. Plaintiff reported this incident to Catherine Celaya (Celaya), an assistant principal at John Muir who oversaw student discipline. Neither Celaya nor the school principal advised Washausen that plaintiff had complained about Richard. Richard's bullying continued after the complaint.

Another student, Nick F. (Nick), who was a friend of Gianni's, threw plaintiff around during a soccer game and hit him in the shins with a stick during field hockey. During touch football games, Nick would jump early before the play started and slam into plaintiff. Approximately one week before the incident, Nick approached plaintiff from behind, shoved him to the ground so hard that his head bounced off the ground, and walked away laughing. Washausen, who had observed Nick's conduct, yelled at Nick and, in front of other students, asked plaintiff whether he wanted Nick to get in trouble. Plaintiff

answered "no," because, in his view, "snitches [got] stitches." Washausen did not discipline Nick in any manner.

Washausen's supervision of the class was "passive." He frequently used his cell phone during class to text, make calls, and access Facebook. As described by Eloise, "pretty much any time we played any sport, [Washausen] was off on the side in the shade on his phone." Washausen often became frustrated with the students during class and would call them names such as "idiot" and "loser." He would also tell them that "they suck[ed]." In the event of an altercation or injury, Washausen would admonish students not to "'go home and whine about this to [their] parents.'"

C.     *The Injury*

On April 17, 2018, the students in the physical education class participated in seven-on-seven touch football. A player who stepped out of bounds or was touched with two hands by a member of the opposing team was deemed "down." The students played four games simultaneously on the school field and none of the games included a referee. Washausen sat on a folding chair approximately 220 feet away from the field on which plaintiff played.

That day, plaintiff and Gianni were on opposing teams. Gianni "really want[ed] to win th[e] game" as this would enable his team to play in the championship game. The game was competitive and the players argued over many plays. Gianni and his teammates taunted members of plaintiff's team, calling them "'trash'" and "'pathetic.'"

5

On the play at issue, plaintiff caught a pass and Gianni ran into him at full speed, causing plaintiff to fly several feet in the air and land on his left side. Plaintiff—who had suffered a tear in his anterior cruciate ligament—screamed in pain as he held his left knee. Gianni laughed in response, called plaintiff a "baby," and claimed that plaintiff was "faking it."

A student ran to get Washausen, who was seated on a bench doing paperwork. Washausen was shocked to learn that plaintiff had been hurt.[4]

## III. PROCEDURAL HISTORY

A.  *Complaint*

The operative first amended complaint asserted claims against Washausen and the District for negligence and breach of a mandatory duty in violation of Education Code[5] section 49079. Plaintiff also alleged causes of action for battery and intentional infliction of emotional distress against Gianni and his parents.

---

[4]   At trial, plaintiff introduced evidence that Celaya failed to report information about Gianni's conduct during the touch football game to teachers or school administrators, but plaintiff concedes that this post-injury omission did not proximately cause plaintiff's injury.

[5]   Further statutory references are to the Education Code unless otherwise indicated.

6

B.    *Jury Instructions*

At trial, defendants requested that the trial court instruct the jury on the primary assumption of risk doctrine.[6]  The court declined, ruling that the doctrine did not apply because plaintiff was injured while participating in a mandatory class.

C.    *Special Verdict Forms*

The parties submitted proposed special verdict forms, which each asked whether the District's breach of a mandatory duty or Washausen's negligence was a substantial factor in causing plaintiff's harm.[7]

In addition, defendants requested that the special verdict forms direct the jury to allocate fault for Gianni's conduct, even if the jury found that Gianni acted intentionally rather than negligently.  Defendants cited in support Civil Code section

---

[6]    Specifically, defendants requested that the court deliver CACI No. 470, "Primary Assumption of Risk—Exceptions to Nonliability—Coparticipant in Sport or Other Recreational Activity" and CACI No. 471, "Primary Assumption of Risk— Exception to Nonliability—Instructors, Trainers, or Coaches."

[7]    Defendants' proposed special verdict form stated:  "For each defendant that received a 'yes' answer in question 1, answer the following:
"Was [the District's] negligence a substantial factor in causing harm to [plaintiff]?
"____Yes    ____No
"Was [Washausen's] negligence a substantial factor in causing harm to [plaintiff]?
"____Yes    ____No"

7

1431.2 and *Weidenfeller v. Star & Garter* (1991) 1 Cal.App.4th 1, 5–6 (*Weidenfeller*). Plaintiff argued that the jury should not be permitted to allocate fault to Gianni at all.

Because the parties had submitted conflicting special verdict forms, the trial court drafted its own proposed special verdict form. Question number one of the court's proposed special verdict form asked the jury to answer yes or no to the following: "Did [the District] fail to carry out a mandatory duty?" and "Was [Washausen] negligent?" Defendants did not object to question number one.

Question number two asked the jury to answer yes or no to the following question: "Was the negligence or failure to carry out a mandatory duty a substantial factor in causing harm to [plaintiff]?" Defendants did not object to question number two.

Finally, as relevant on appeal, question number four asked the jury, "Did Gianni . . . act towards [plaintiff] on April 17, 2018 in the touch football game in a manner that was negligent or intentional?" The form then instructed the jury that it should only proceed to apportion fault between Gianni and defendants if it concluded that Gianni had acted negligently. Defendants objected and again argued that the jury should be permitted to apportion fault to Gianni even if it found that he acted intentionally rather than negligently. The court, however, disagreed.

Following a hearing, defendants approved the trial court's proposed special verdict form with "[n]o exceptions."

D.     *Jury Verdict*

On September 16, 2021, the jury returned its verdict.  It found that the District failed to carry out a mandatory duty and that Washausen was negligent.  The jury answered "yes" to question number two of the special verdict form, "Was the negligence or failure to carry out a mandatory duty a substantial factor in causing harm to [plaintiff]?"  On question number four, the jury found that Gianni intentionally injured plaintiff.  Accordingly, and as instructed on the special verdict form, the jury did not answer the next question, which asked it to apportion fault to Gianni.  For damages, the jury awarded plaintiff:  $500,000 for future medical expenses; $750,000 for past noneconomic damages; and $500,000 for future noneconomic damages.

The trial court entered judgment on the verdict, and defendants then filed motions for judgment notwithstanding the verdict and for new trial, which the trial court denied.  Defendants timely appealed.

## IV.  DISCUSSION

A.     *Breach of Mandatory Duty*

Defendants contend there was no substantial evidence that the District's breach of section 49079's reporting duty was a proximate cause of plaintiff's injury and the District therefore was entitled to judgment notwithstanding the verdict on this claim.

9

"""A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support.  [Citation.]  [¶]  . . . As in the trial court, the standard of review [on appeal] is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion."""  (*Webb v. Special Electric Co., Inc.* (2016) 63 Cal.4th 167, 192.)

Section 49079, subdivision (a) requires a school district to inform teachers about students who have engaged in, or are reasonably suspected of having engaged in, among other things: causing or threatening physical injury or willfully using violence upon another person, except in self-defense (§ 48900, subd. (a)(1) and (2)); and "intentionally engag[ing] in harassment, threats, or intimidation, directed against . . . pupils, that is sufficiently severe or pervasive to have the actual and reasonably expected effect of materially disrupting classwork, creating substantial disorder, and invading the rights of . . . pupils by creating an intimidating or hostile educational environment" (§ 48900.4; see § 49079, subd. (a).)  Additionally, "[t]he district shall provide the information to the teacher based upon any records that the district maintains in its ordinary course of business, or receives from a law enforcement agency, regarding a pupil described in this section." (*Ibid*.)  A public entity may be subject to tort liability for breaches of a mandatory duty. (Gov. Code, § 815.6; *B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 179.)

There was insufficient evidence that the District breached a mandatory duty to report Gianni's conduct toward plaintiff to teachers.  Although there was ample testimony that Gianni had engaged in intimidating and disruptive conduct against plaintiff

10

during show choir and physical education class, there was no substantial evidence that the District either knew or reasonably suspected Gianni was engaged in such conduct prior to the April 17, 2018, injury. Specifically, there was no evidence that plaintiff complained about Gianni to a teacher or school administrator and Eloise testified that she did not do so.[8] Finally, there was no evidence that an employee or officer of the District witnessed, or reasonably suspected, Gianni engage in any conduct described in section 49079, subdivision (a) against plaintiff prior to plaintiff's injury.

Further, although plaintiff produced evidence that Washausen failed to report Nick's conduct to others, there was no substantial evidence that such failure was a substantial factor in causing plaintiff's injury. "Where a claim of liability is premised on the administration's failure to inform a teacher of a student's disciplinary record, the finder of fact must engage in a difficult inquiry into whether the teacher's lack of this specific information was a substantial factor in bringing about the harmful conflict." (*Skinner v. Vacaville Unified School Dist.* (1995) 37 Cal.App.4th 31, 42.) Moreover, "[t]he value to a teacher of information about a student's prior disciplinary record will vary with the circumstances of a particular class. In many instances, the teacher may have an opportunity to observe the student that makes the information superfluous or nearly so." (*Ibid*.) Here, based on his first-hand observations, Washausen

---

[8]     Indeed, plaintiff in his brief concedes that there is a lack of any such reports, stating that "because of the demonstrated practice at the school for teachers not to report misconduct that fell within section 49079, these incidents [between Gianni and plaintiff] were not reported."

11

was well aware of Nick's conduct toward plaintiff, which "conveyed [Nick's] potential for troublemaking far more effectively than the dry communication of his eighth grade disciplinary record." (*Ibid*.) Accordingly, there is insufficient evidence to support a finding that Washausen's failure to report Nick's conduct proximately caused plaintiff's injury.

Finally, although there was evidence that the District was aware of but failed to report Richard's conduct toward plaintiff to teachers in violation of section 49079, subdivision (a), there was no substantial evidence that such failure proximately caused plaintiff's injury. ""As a matter of practical necessity, legal responsibility must be limited to those causes which are so close to the result, or of such significance as causes, that the law is justified in making the defendant pay."" (*Modisette v. Apple Inc.* (2018) 30 Cal.App.5th 136, 154.) It was Gianni, not Richard, who caused plaintiff's injury. Thus, the District's failure to inform Washausen about Richard's conduct toward plaintiff does not justify imposing liability against the District for Gianni's conduct toward plaintiff. Accordingly, there is insufficient evidence to support the judgment against the District.[9] We therefore reverse

---

[9] Plaintiff cites to a jury instruction which informed the jury that school districts and teachers have a duty to supervise the conduct of children on school grounds. (See *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 869 ["'California law has long imposed on school authorities a duty to "supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection"'"].) Plaintiff, however, did not assert at trial that the District was liable for its failure to supervise students. Plaintiff also did not assert a theory of vicarious liability against the District for Washausen's negligence. Instead, the sole claim

that judgment and remand for the trial court to enter judgment in favor of the District.  (*Frank v. County of Los Angeles* (2007) 149 Cal.App.4th 805, 833.)

B.      *Primary Assumption of Risk*

Defendants contend that the trial court erred by failing to instruct the jury on the primary assumption of risk doctrine. Whether the doctrine applies to a negligence claim is a legal question involving the duty of care which we review de novo. (*Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 161.)

"'Although persons generally owe a duty of due care not to cause an unreasonable risk of harm to others (Civ. Code, § 1714, subd. (a)), some activities—and, specifically, many sports—are

---

against the District presented to the jury at trial was for a violation of section 49079, subdivision (a).  (See *Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.* (2021) 71 Cal.App.5th 528, 545 [for special verdict forms, parties are limited to jury's express findings, and courts cannot imply findings in support of verdict]; see also *Bailon v. Appellate Division* (2002) 98 Cal.App.4th 1331, 1339 ["a respondent may assert a new theory to establish that an order was correct on that theory '*unless* doing so would unfairly prejudice appellant by depriving him or her of the opportunity to litigate an *issue of fact*'"]; *Montague v. AMN Healthcare, Inc.* (2014) 223 Cal.App.4th 1515, 1520–1521 ["The plaintiff bears the burden" of proving vicarious liability].)

During oral argument, defendants conceded that "the District is vicariously liable for Mr. Washausen's conduct." Whether the District is obligated to pay for plaintiff's injuries under an indemnification agreement or otherwise is not an issue before us on appeal.

13

inherently dangerous.  Imposing a duty to mitigate those inherent dangers could alter the nature of the activity or inhibit vigorous participation.' [Citation.]  The primary assumption of risk doctrine, a rule of limited duty, developed to avoid such a chilling effect.  [Citations.]  Where the doctrine applies to a recreational activity, operators, instructors and participants in the activity owe other participants only the duty not to act so as to *increase* the risk of injury over that inherent in the activity." (*Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1154 (*Nalwa*).)

"[T]he primary assumption of risk doctrine is not limited to activities classified as sports, but applies as well to other recreational activities 'involving an inherent risk of injury to voluntary participants . . . where the risk cannot be eliminated without altering the fundamental nature of the activity.' [Citation.]  [¶]  The primary assumption of risk doctrine rests on a straightforward policy foundation:  the need to avoid chilling vigorous participation in or sponsorship of recreational activities by imposing a tort duty to eliminate or reduce the risks of harm inherent in those activities.  It operates on the premise that imposing such a legal duty 'would work a basic alteration—or cause abandonment' of the activity." (*Nalwa, supra*, 55 Cal.4th at p. 1156.)  "Allowing voluntary participants in an active recreational pursuit to sue other participants or sponsors for failing to eliminate or mitigate the activity's inherent risks would threaten the activity's very existence and nature." (*Id.* at p. 1157.)

Thus, courts have applied the primary assumption of risk doctrine to a range of school activities including extracurricular programs (see *Cann v. Stefanec* (2013) 217 Cal.App.4th 462, 470–

14

471 [mandatory weight lifting session for members of college swim team]; *Lilley v. Elk Grove Unified School Dist.* (1998) 68 Cal.App.4th 939, 945–946 [after-school wrestling program]; *Aaris v. Las Virgenes Unified School Dist.* (1998) 64 Cal.App.4th 1112, 1119 [cheerleading practice]) and elective classes (see *Fortier v. Los Rios Community College Dist.* (1996) 45 Cal.App.4th 430, 432–433, 440 [plaintiff enrolled in advanced football class]).  In each of these examples, a plaintiff, in the first instance, voluntarily participated in an activity (which may have required the undertaking of certain related tasks), such that application of the doctrine was appropriate.  (See, e.g., *Swigart v. Bruno* (2017) 13 Cal.App.5th 529, 537, italics added ["Primary assumption of risk is a defense that relieves a defendant of any duty to the plaintiff when the plaintiff is injured due to a risk that is inherent in an activity in which the plaintiff *chose to participate*"]; *Jimenez v. Roseville City School Dist.* (2016) 247 Cal.App.4th 594, 600, italics added ["'Primary assumption of risk occurs where a plaintiff *voluntarily participates* in a sporting event or activity involving certain inherent risks'"]; *Rosencrans v. Dover Images, Ltd.* (2011) 192 Cal.App.4th 1072, 1082, italics added ["Primary assumption of the risk means that the plaintiff has *voluntarily participated* in a sport that includes various inherent risks, and therefore, the defendant is relieved of his or her duty to use due care to avoid the plaintiff suffering an injury as a result of those inherently risky aspects of the sport"].)

Here, it is undisputed that plaintiff's participation in the physical education class was not voluntary on his part, but rather was required by the middle school's curriculum.  We decline to extend the application of the doctrine to a sports activity that is, as here, part of a mandatory physical education class.  Indeed, it

15

is the compulsory nature of education that imposes, in part, a duty upon school districts to take reasonable steps to protect their students. (See § 48200 ["Each person between the ages of 6 and 18 years not exempted . . . is subject to compulsory full-time education"]; *J.H. v. Los Angeles Unified School Dist.* (2010) 183 Cal.App.4th 123, 142; see also *West v. Sundown Little League of Stockton, Inc.* (2002) 96 Cal.App.4th 351, 357 [application of the doctrine "turns on the nature of the sport or activity in question and on the parties' general relationship to the activity and to each other"].) Accordingly, the trial court did not err when it refused to instruct the jury on the primary assumption of risk doctrine.

C.    *Special Verdict Form—Ambiguity of Question Number Two*

Defendants additionally argue that if we conclude there was no substantial evidence for the breach of a mandatory duty claim—and we have so concluded—then question number two of the special verdict form was fatally defective on the negligence claim, such that we must remand for a new trial. According to defendants, by using the disjunctive "or"—in asking the jury, "Was the negligence *or* failure to carry out a mandatory duty a substantial factor in causing harm to [plaintiff]?" (italics added)— the verdict form permitted the jury to find that the District's failure to carry out a mandatory duty was a substantial factor in causing plaintiff's harm, but Washausen's negligence was not.[10]

---

[10]    Defendants do not dispute there was sufficient evidence to support a finding that Washausen's negligence caused plaintiff harm.

16

Defendants, however, failed to object to the special verdict form in the trial court and instead expressly approved of the language about which they now complain. Moreover, after the jury rendered its verdict and was polled, defendants did not raise any concern about the verdict with the court. Nor did they ask to have the jury correct or clarify the verdict before the court discharged the jury. (Code Civ. Proc., § 619 ["When the verdict is announced, if it is informal or insufficient, in not covering the issue submitted, it may be corrected by the jury under the advice of the court, or the jury may be again sent out"].) Accordingly, defendants have forfeited on appeal their challenge to question number two of the special verdict form. (See *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1242–1243 [challenge to jury's skipping questions on confusing verdict form forfeited where the "appellant did not raise the defective verdict issue until after the jury had been discharged"].)

D.    *Special Verdict Form—Comparative Fault*

Finally, defendants argue that question number four of the special verdict form misadvised the jury that it could not apportion fault between defendants and Gianni if it concluded that Gianni had engaged in an intentional act. On question number four, defendants raised an objection in the trial court but, following the court's ruling against them, agreed to the language. (See *Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 329 [invited error not applicable where party "'"'"endeavor[s] to make the best of a bad situation"'"'"'].) On this record, we will consider the merits of defendants' argument on appeal. "We analyze the special verdict form de novo." (*Id.* at p. 325.)

17

"Section 1431.2 became part of the Civil Code in June 1986, through the electorate's adoption of Proposition 51, an initiative measure entitled the Fair Responsibility Act of 1986." (*B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 8–9 (*B.B.*).) Civil Code section 1431.2, subdivision (a) provides: "In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."

We agree with defendants that the jury should have been directed to apportion fault to Gianni even if it concluded—as it ultimately did—that Gianni acted intentionally rather than negligently. As the court in *Weidenfeller, supra*, 1 Cal.App.4th at page 6 explained: "It is inconceivable the voters intended that a negligent tortfeasor's obligation to pay only its proportionate share of the noneconomic loss, here 20 percent, would become disproportionate increasing to 95 percent solely because the only other responsible tortfeasor acted intentionally. To penalize the negligent tortfeasor in such circumstances not only frustrates the purpose of the statute but violates the commonsense notion that a more culpable party should bear the financial burden caused by its intentional act."

Our Supreme Court's opinion in *B.B., supra*, is not to the contrary. Although the court rejected a defendant's argument that an intentional tortfeasor can seek apportionment against a negligent tortfeasor under Civil Code section 1431.2, it

18

"express[ed] no opinion on whether negligent tortfeasors may, under [Civil Code] section 1431.2, subdivision (a), obtain a reduction in their liability for noneconomic damages based on the extent to which an intentional tortfeasor contributed to the injured party's injuries." (*B.B., supra*, 10 Cal.5th at p. 29, fn. 4.) It also "express[ed] no opinion on whether, for policy reasons, existing common law principles of comparative fault should be changed vis-à-vis intentional tortfeasors." (*Ibid*.)

We find the reasoning of *Weidenfeller, supra*, to be persuasive. Gianni's act of intentionally running into plaintiff was a substantial causative factor in plaintiff's injury and Washausen therefore should have been entitled to seek allocation of fault pursuant to Civil Code section 1431.2.[11]

Because the trial court failed to instruct the jury on comparative fault principles, we will remand for retrial on the

---

[11] Plaintiff argues that because of the special relationship between school districts, their employees, and the districts' pupils, Proposition 51 should not apply here. Plaintiff further contends that these facts are distinguishable from those in *Weidenfeller, supra*, because defendants had a special relationship with the intentional tortfeasor Gianni. We are unpersuaded. "The express purpose of Proposition 51 was to eliminate the perceived unfairness of imposing 'all the damage' on defendants who were 'found to share [only] a fraction of the fault.' ([Civ. Code,] § 1431.1, subd. (b).) In this context, the only reasonable construction of [Civil Code] section 1431.2 is that a 'defendant['s]' liability for noneconomic damages cannot exceed his or her proportionate share of fault *as compared with all fault responsible for the plaintiff's injuries*, not merely that of 'defendant[s]' present in the lawsuit." (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 603.)

apportionment of fault. (*Collins v. Plant Insulation Co.* (2010) 185 Cal.App.4th 260, 276 (*Collins*).)[12]

---

[12] Defendants contend that the issue of damages must also be retried. We reject this contention. "A limited retrial may be ordered if the issue to be tried "'can be separately tried without such confusion or uncertainty as would amount to a denial of a fair trial.'"" (*Collins, supra*, 185 Cal.App.4th at p. 276.) Here, the jury found Washausen liable for causing plaintiff's injury. Moreover, defendants do not challenge the amount of damages awarded. Thus, "a retrial can properly be limited to the issue of apportionment of fault without causing 'confusion or uncertainty.'" (*Ibid*.)

## V.  DISPOSITION

The judgment is reversed and the cause is remanded.  On remand, the trial court is directed to enter judgment in favor of the District on the breach of a mandatory duty claim, the only claim against the District on which the jury rendered a verdict. The court is further directed to hold a retrial limited to apportionment of fault between Washausen and Gianni as to the noneconomic damages found by the jury on the negligence claim against Washausen.  Defendants are entitled to recover their costs on appeal.

CERTIFIED FOR PARTIAL PUBLICATION


KIM, J.


We concur:



RUBIN, P. J.



BAKER, J.


21